DANIEL   McCARTHY,   Appellee,   v.   CHICAGO,   ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Master and Servant: NEGLIGENCE: PERSONAL INJURY: EVIDENCE: VERDICT. The plaintiff was a bridge builder in the employ of the defendant, and at the time of receiving his injuries was engaged in assisting in the removal of a heavy timber, known as a chord, from a truss bridge to the ground by [the aid of a pile driver and flat car. As the chord was raised from the bridge, the north end resting on the flat car, while the south end extended beyond the rear of the car, and several feet higher than the north end, it swung against the leads of the pile driver, and became fast. While attempting to shove the chord from the frame the plaintiff's leg was struck by the chord, and broken. Upon the trial the plaintiff testified, that the exhaust of the engine was running at this time, and that when running "everything worked by signs;" that he was standing at the south end of the car to keep out of the way of the chord until he got orders, when the foreman motioned to him, and shook his head at him as if he were standing there too long, but he could not hear what he said; that the foreman motioned to him to go across there (the witness illustrating with a forward movement with the hands), and that he went over and took hold of the chord, when there was a slack on the leads, and he was struck by the chord; that when the foreman made said signal to the plaintiff he was standing between the men holding the leads and the car on the track. The plaintiff further testified, "I did not know what he (the foreman) motioned at me for, but I went ahead there." The jury found specially that the foreman ordered the plaintiff by motion and gesture to go over to the east side of the car, and push the end of the chord resting on the car off onto the ground, and returned a general verdict in favor of the plaintiff. Held, that the special findings were not supported by the evidence, and that under the allegations of the petition charging the defendant with negligence in that the foreman directed the above action of the defendant by motions and gestures, the evidence did not warrant the conclusion of negligence against the company in ordering the plaintiff to the place where he was injured.

*Appeal from Cass District Court.*—Hon. H. E. Deemer, Judge.

Saturday, October 17, 1891.

Action for personal injuries. There was a verdict and judgment for the plaintiff, from which the defendant appeals.—*Reversed.*

*T. S. Wright, Cummins & Wright* and *R. G. Phelps,* for appellant.

*James J. Dolan* and *Willard & Willard,* for appellee.

Granger, J.—The plaintiff was a bridge builder and employe of the defendant company. In August, 1887, he was engaged in his capacity as bridge builder, on and about a pile driver used by the defendant company in the construction and repair of railway bridges. The pile driver for use was placed on a flat car, and by that means moved as the necessities for its use required. The pile driver was operated by a stationary engine on the same car. The plaintiff's duties were "to work upon the bridges; assist in putting on and taking off such timbers as were used on the cars, as they were being hauled from place to place on the car; and to work on and about the car when in motion, and when standing still; to assist in attending to the pile driver and the brake on the car, which had to be tightened and loosened as the car was moved or stopped." About the twenty-eighth day of August, 1887, the car and pile driver were being used in the repair of a bridge on the defendant's road, and the car with the pile driver having been placed in proper position on the track by a locomotive engine, the pile driver and stationary engine were used to raise, from a truss bridge which was being moved, a heavy timber known

as a "chord," and to lower it to the ground; the chord, when loosened from the bridge, being pendent from the pile driver by a "pile-line." As an aid or means of governing its course, there was attached to it a hand-line, by which others than the plaintiff aided in the work. The foreman of the work was one Elgenfritz. As the chord was raised from the bridge, the north end rested on the floor of the car, while the south end extended beyond the rear of the car, and was several feet higher than the north end. In this position it swung against the leads of the pile driver, and, it is said, catching a bolt, became fast. The men with the hand-line thus held the chord against the leads, and the car was moved forward to the place where the chord was to be lowered to the ground. At this time the chord was on the east, and the plaintiff on the west, side of the car. The plaintiff went to the east side, and, in an attempt to shove the chord from the frame, his leg was struck by the chord, and broken. This injury is charged as the neglect of the defendant in the following language; "That, notwithstanding the dangerous position of said chord, * * * said foreman carelessly and negligently directed, by motions and gestures, plaintiff to pass over from the west side of the car to the east side, and to push the end of the chord resting on the car off onto the ground, which direction plaintiff immediately undertook to perform, and passed over to the east side of said car, and took hold of said chord, and attempted to push the same off the car; that at or about the same time said foreman, knowing, or in duty bound to know, that plaintiff was near the north end of said chord, and in a place of danger should said chord be loosened, carelessly and negligently ordered the men holding the hand-line to swing with the same to the east and to pull; that said men, in obedience to said order, carelessly and negligently passed forward, and to the east, with said hand-

line, * * * and there carelessly and negligently pulled said chord loose."

The jury returned fourteen special findings, among which are the following, as to the negligent acts of Elgenfritz: "*Ninth*. Do you find that Elgenfritz gave an order, by motion and gesture, to plaintiff, to pass over from the west side of the car to the east side, and to push the end of the chord resting on the car off onto the ground? *A*. Yes.

"*Tenth*. Do you find that Elgenfritz gave an order intentionally to plaintiff, by motions and gestures, to pass over from the west side of the car to the east side, and to push the end of the chord resting on the car off on the ground? *A*. Yes.

"*Eleventh*. Do you find that Elgenfritz intentionally gave to the plaintiff an order, by motion and gesture, to go from the west side of the car to the east side, and push the end of the chord resting on the car off onto the ground, by standing or stepping in front of the end of the stick or chord? *A*. Yes."

It is urged that these findings and the verdict have no support in the evidence, and we think the position is correctly taken. The following from the plaintiff is the testimony, as quoted by appellee, for their support: "Mr. Elgenfritz stood between me and those men [the men who held the hand-line], and, the engine being exhaust, used to work by signs; and he motioned me to go across there [here witness illustrates with a forward movement with his hands]; and I stood right here at the end of the car. I went over and took hold of the stick of timber, caught hold of it, and then there was a slack, and shoved me right against there." "When Elgenfritz made this signal to me, he stood between the men and the car on the track. There was nothing to prevent his seeing me. When I was standing there, on the west side of the leads, Elgenfritz had just turned around, and made a motion at me, and shook his head

at me.  He is a quick man in making motions, and he gets excited, and he swore, and said something, I could not say what, but he motioned at me to move over.  I was standing west of the leads, at the south end of the car, close to the leads, with my hands on the leads or the rod that stood behind them.  I was standing there to keep out of the way of the chord until I got orders. Elgenfritz motioned at me and shook his head, as if he said something.  I could not say what he said.  I understand he was swearing.  He motioned, and shook his head, as if I was standing there too long.  He said something, but I could not catch it.  I could hear his voice, but if I am not mistaken the exhaust of the engine was running at the time; and when it was running, everything went by motions.  I went over to the north end [of the car], because the motion gave me orders to shove it off from the frame.  It was kind of caught, I suppose.  It stood up there, and he motioned for me to go over.  I did not know what he motioned at me for, but I went ahead there.  I was always ready to do what I was ordered to do.''

Nothing that we find in the evidence adds to the foregoing to show that the foreman ordered the plaintiff to the place where he was injured.  Although the plaintiff says that he was by the motions ordered to go where he did to shove off the chord, it is manifest from his statements that he only supposed the foreman so intended.  He also says, in terms, that he did not know what the foreman motioned at him for.  The most that can be said, from the evidence, is that the foreman made motions that he did not understand; and, upon his judgment of what was meant, he went to the place where he was injured.  The findings of such fact cannot warrant the conclusion of negligence against the company in ordering him to the place where he was injured.  Under the allegations, he must have been ordered to the place; not motions made, from which

he merely understood such an order, for no such negligence is charged, and the specific acts of negligence relied upon are alleged. Elgenfritz testifies that he made no motions whatever to the plaintiff, and did not see him, and the other persons observing the situation saw no such motions; all of which strengthens the appellant's view of the case. But, as to matters of conflict, we adhere to the rule that they must be considered in support of the verdict, and we base our conclusions on the fact of the absence of evidence from which the jury could properly find that such an order was made. A motion designed for one purpose, and misunderstood, mistakenly, for another, would not be an order for the latterpurpose.

It is urged that it was negligence for Elgenfritz to order the men with the hand-line to pull the chord loose from the leads while the plaintiff was at the north end of it, even though he did not order him there. But evidence is equally wanting to support a conclusion that Elgenfritz knew that the plaintiff was there. His (Elgenfritz) testimony is, that he did not know that he was there when such order was given, and there is no testimony to show that he did. The plaintiff testifies that Elgenfritz motioned to him while he was on the west side of the car; but, as we hold, there is no evidence from which it could be found that he ordered him to the place of injury. It cannot be said from the fact of the motions being made, that he was seen by Elgenfritz at that place. No additional evidence is cited by the appellee to sustain this point, and we discover none.

It is, however, urged that it was Elgenfritz's "business to know" if any person was in the way of the moving timber, and counsel cites the rule as to persons shoveling ice and snow from the top of a building to a sidewalk. We think that, before the case can be likened to that of shoveling ice or snow upon a side-

walk, it should appear that there were similar reasons for anticipating the presence of persons at the place of danger. We are not disposed, in any degree, to weaken the rule of diligence designed in the interest of personal safety, but we think the statement of the rule, that he was bound to know of the plaintiff's presence, is too broad, and without the support of authority. That he was required to be diligent to know we may, for the purposes of the case, concede, but we look in vain for testimony to give support to a conclusion of negligence in this respect. In fact, the case is without evidence to support a conclusion of negligence, under the allegations of the petition. In support of our legal conclusion, see *Bothwell v. C., M. & St. P. Ry. Co.*, 59 Iowa, 192; *Moore v. Burlington & W. Ry. Co.*, 72 Iowa, 75; *Asbach v. Chicago, B. & Q. Ry. Co.*, 74 Iowa, 248; *Lester v. Sallack*, 31 Iowa, 477; *McKay v. Thorington*, 15 Iowa, 28; *Lodge v. Reznor*, 13 Iowa, 600.

We discover no other question that, in view of the further disposition of the case, demands our consideration, and the judgment is REVERSED.