J. A. CORY, Appellee, v. W. E. HAMILTON, Appellant.

1. **County Printing**: AWARD: APPEAL. Where, without a day being named by the board of supervisors of a county when such statements should be filed, the several proprietors of three newspapers in the county filed statements of the number of subscribers of their respective papers, and thereafter, when each of said papers was represented before the board, a hearing was had as to the claims of the respective papers, and evidence received as to charges of fraud in respect to the list of one of the papers, and an award of the printing was made upon such hearing; *held*, that there was a "contest" for the printing within the meaning of chapter 197 of Acts of the General Assemby, from which an appeal might be taken to the district court.

2. ——: ——: EVIDENCE. The record of the meeting of the board being in evidence, and its correctness not being assailed, *held*, that the testimony of one of the members who was present, that there was no contest before the board in relation to said award, was properly excluded.

3. ——: ——: APPEAL: COSTS. The plaintiff being awarded all the relief asked by him in the district court, *held*, that the taxation of one third of the costs against him was erroneous.

*Appeal from Sac District Court.*—HON. J. H. MACOMBER, Judge.

SATURDAY, FEBRUARY 6, 1892.

THIS proceeding grows out of the failure of the board of supervisors of Sac county to select a newspaper published by plaintiff as one of the official papers of the county. An appeal was taken from the action of the board, and a trial in the district court resulted in a judgment awarding to the plaintiff the county printing as against the defendant Hamilton. One third of the costs were taxed to the plaintiff. Each party appeals, the appeal of Hamilton being first perfected.—*Affirmed.*

*W. A. Helsell,* for appellant.

*F. M. Powers* and *W. H. Hart,* for appellee.

ROBINSON, C. J.—I. The action of the board of supervisors of which the plaintiff complains is shown

1. COUNTY PRINT-
ING: AWARD:
APPEAL.

by a transcript of the minute book of the board as follows:

"AUDITOR'S OFFICE, January 8, 1890.

"Afternoon Session.

"The time having arrived for awarding the contract for the county printing for the ensuing year, and the editors of the various newspapers in the county being apprised of the matter, and there being three applications made by three papers in the county, viz., the Sac Sun, the Sac County Democrat, and the Odebolt Chronicle, on motion of H. H. Fitch the contract was awarded to the Sac Sun and Odebolt Chronicle; H. H. Fitch and C. H. Babcock voting aye, and F. H. Hahn voting nay."

The appellant contends that this action was taken without any contest; that an appeal therefrom did not lie, and that the district court erred in assuming jurisdiction to try the case. Chapter 197 of the Acts of the Twentieth General Assembly contains the following provisions:

"The board of supervisors shall, at its January session of each year, select two newspapers published within the county, or one, if there be but one published therein, having the largest number of *bona fide* yearly subscribers within the county, which circulation shall be determined as follows: In case of contest the applicants shall each deposit with the county auditor, on or before a day named by the board of supervisors, a certified statement, subscribed and sworn to by some competent officer, giving the names of the several post-offices, and the number and the names of the *bona fide* yearly subscribers receiving their papers through each

of said offices, living within the county, such statements to be in sealed envelopes, and opened by the county auditor upon direction by the board of supervisors to do so; and the two applicants thus showing the greatest number of *bona fide* yearly subscribers living within the county shall be the county official papers, in which all the proceedings of the county board of supervisors, the schedule of bills allowed, and the reports of the county treasurer, including a schedule of the receipts and expenditures, shall be published at the expense of the county during the ensuing year. * * * In case charges of fraud are made by an aggrieved publisher, the board shall seek other evidence of circulation, and the aggrieved publisher shall have the right of appeal to the circuit [now district] court for the redress of grievance.''

It does not appear that the board of supervisors named any day on or before which the certified statements contemplated by the statute should be filed; the statement in regard to the time for awarding the printing contained in the record of their proceedings having reference only to the fact that the selection was required to be made at the January session. Before the action of the board in question was taken, Hamilton, the proprietor of the Chronicle, had filed with the auditor a verified statement showing that the actual circulation of his paper in Sac county was five hundred and twenty-six copies. Miller & Smith, proprietors of the Sun, had filed a similar statement showing the circulation of that paper to be six hundred and fourteen copies, and Cory, proprietor of the Democrat, had in a similar manner shown that the circulation of his paper was eight hundred and twenty-two copies. Hamilton did not appear before the board, but there is evidence which tends to show that he did not intend to be present, and that one of the proprietors of the Sun acted in his behalf. There was considerable discussion before the board in regard to the list of the Democrat,

the claim being made that it was fraudulent. Some evidence in regard to the matter was offered, and the action of the board which we have set out was taken.

The fact that the board had not previously fixed a day for the filing of statements, and the hearing of evidence in regard to them, did not deprive the hearing actually had of the character of a contest. The provision of the statute in regard to the naming of a day for the filing of the statements was designed for the benefit of the applicants, and may be waived by them. It is true the statute provides for receiving other evidence in case a charge of fraud is made by an aggrieved publisher, but that does not require that the board make a selection before the hearing as to the charge of fraud is had. The publisher aggrieved is one who will be prejudiced if the list alleged to be fraudulent should be treated as *bona fide*, and he is aggrieved within the meaning of the statute when the fraudulent list is filed and insisted upon by the applicant who filed it, as well as when an adverse selection is made. If this be not true, the claim of fraud which is urged need not be made until after the papers have been selected. Then an applicant who fails may allege fraud and require a hearing, and, should it result in a new selection, other charges of fraud and other hearings might follow in succession. No construction of the statute which would authorize such a result is permissible. When the statements are opened, an opportunity should be given to examine and make objections to them. If no charge of fraud is made, and the statements are sufficient, the action of the board will be based upon them, but if such charges are made they should be so presented as to permit the board to dispose of all questions which must be determined in selecting the papers before the selection is made. The jury found specially that there was a contest before the board, and we think the finding is sustained by the evidence. Since the parties interested actually appeared,

and made the showing in support of their respective claims which they deemed proper, the failure to fix the time for hearing was immaterial.

II. The appellant complains that a member of the board of supervisors who attended the session at which the action in question was taken was not permitted to testify that there was no contest before the board. The presumption was that the record disclosed the action taken by the board, and it was unnecessary to prove that it did until the record was assailed. Moreover, the whole matter seems to have been fully investigated before the trial in the district court was closed, and, if error in the ruling be conceded, no prejudice could have resulted from it.

2. ——: ——: evidence.

III. The plaintiff was awarded all the relief he demanded in the district court. So far as we are advised, there was no ground for requiring him to pay any part of the costs, and none is suggested by the appellant. The judgment of the district court is reversed on the appeal of the plaintiff, and on Hamilton's appeal it is AFFIRMED.

3. ——: ——: appeal: costs.