OF

## THE STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, A. D. 1896,

AND IN THE FIFTIETH YEAR OF THE STATE.

---

### J. S. Ross v. W. A. K. Campbell, Appellant.*

| 98 | 1 |
| 111 | 255 |

| 98 | 1 |
| 114 | 106 |

**Official Paper Selection: PRACTICE.** Code, 307, provides, that where the selection of official papers is in dispute, the applicants shall file certified subscription statements, that if fraud is charged the board shall seek other evidence, and that an aggrieved publisher may appeal to the district court. *Held,*

a. A contest which may be appealed in, arises when more than two statements are filed, and with requests that a given paper be selected.

b. A publisher is aggrieved when, an adverse application, based on fraudulent bids, is filed, and if he permits a selection to be made without charging fraud before the board, he cannot raise the question of fraud, on appeal.

*The figures on the left of the syllabi refer to corresponding figures placed on the margin of the case at the place where the point of the syllabus is decided.

*Appeal from Hardin District Court.—Hon. S. M. Weaver, Judge.*

## Monday, April 13, 1896.

THE plaintiff is the publisher of the Eldora *Herald*, and the defendant is the publisher of the Eldora *Ledger*, both of which are weekly newspapers, published in Hardin county. In January, 1895, the parties named, and the publisher of the Eldora *Enterprise*, another weekly newspaper of the county, applied to the board of supervisors to have their respective papers selected as official newspapers, under the provisions of section 307 of the Code. The board selected the *Ledger* and *Enterprise*. The plaintiff, failing to secure a rehearing, appealed to the district court, which heard the cause, and found that the *Herald* was entitled to be selected in lieu of the *Ledger*, and adjudged that substitution be made. The proprietor of the *Ledger* appeals.—*Reversed.*

*H. L. Huff* and *J. H. Scales* for appellant.

*Albrook & Lundy* for appellee.

ROBINSON, J.—The material facts shown by the record submitted to us, are substantially as follows: On the tenth day of January, 1895, the board of supervisors examined the applications for the selection of official newspapers then on file, five or more in all, and, finding that sworn statements showing the number of subscribers within the county had not been filed by any applicant, continued the hearing of the applications to the twenty-eighth day of the month. At that time, sealed applications from five newspapers were opened. The sworn statement of the appellant showed that the *Ledger* had one thousand

and twenty-four subscribers, living and receiving the paper in the county. The sworn statement of T. O. Walker, the publisher of the *Enterprise*, showed that it had nine hundred and ninety-seven such subscribers, and the sworn statement of Ross, showed that the *Herald* had nine hundred and eighty. The applications were opened between 1 and 2 o'clock in the afternoon, and further action in regard to them was deferred until 7 o'clock in the evening, to permit examinations and objections to be made. At the appointed time, they were taken up by the board. It does not appear that any objection had been made to any application, nor that time was asked by any one for further investigation, nor that evidence was offered to contradict any showing made. The board counted the names on each list, and made the selection stated. In the afternoon of the next day, the plaintiff appeared before the board, with an attorney, and filed a petition, in which he asked that the matter of selecting the official papers be opened; that a time for the further consideration of the applications be fixed; and that the petitioner be permitted to show, what he alleged to be true, that the selection made was erroneous, because the lists furnished by the proprietors of the *Ledger* and *Enterprise* contained names of persons who were not *bona fide* annual subscribers, as required by law: and that the list of the *Herald* contained more names of such subscribers than any other paper published in the county. The petition stated that the petitioner was aggrieved by the fact that he had no notice of the time when the board would open the lists filed, and that, had he been informed of the examination which was made, he would have appeared, and made the charges of fraud indicated in his petition. After considering the petition, the board declined to grant it, and the plaintiff then appealed to the

district court. On the twenty-fifth day of February, he filed in that court a statement to the effect that a large number of persons named on the list of the defendant did not reside in Hardin county; that a large number of others whose names appeared in the defendant's list, refused to receive the *Ledger*, and were not subscribers for it; that the paper was sent to a large number of other persons, whose names were in the defendant's list, without compensation, and without expectation of compensation, as a gratuity; that the names of the classes of persons specified were placed in the list fraudulently, for the purpose of inducing the board of supervisors to select the *Ledger* as an official paper. The defendant filed in the district court a motion to dismiss the appeal, which was overruled; and another to strike from the files the statement to which we have just referred, on which no ruling is shown; and objections to the taking of testimony, which were overruled. Testimony was introduced, which fully justified the conclusions of the district court that the *Herald* had more *bona fide* yearly subscribers in Hardin county than the *Ledger* had. We do not understand that to be controverted, but it is urged that the district court was not authorized to receive the evidence, or determine the case on its merits.

The portion of section 307, of the Code, which is material to a determination of this controversy, is as follows: "The board of supervisors shall, at its January session of each year, select two newspapers published within the county, * * * having the largest number of *bona fide* yearly subscribers within the county, which circulation shall be determined as follows: In case of contest the applicants shall each deposit with the county auditor, on or before a day named by the board of supervisors, a certified statement, subscribed and sworn to before some competent officer, giving the names of the several postoffices and

the number and the names of the *bona fide* yearly subscribers receiving their papers through each of said offices, living within the county, such statements to be in sealed envelopes and opened by the county auditor upon direction of the board of supervisors to do so, and the two applicants thus showing the greatest number of *bona fide* yearly subscribers living within the county shall be the county official papers. * * * In case charges of fraud are made by an aggrieved publisher, the board shall seek other evidence of circulation, and the aggrieved publisher shall have the right of appeal to the circuit [now district] court for redress of grievance. * * *"

When more than two statements are filed with applications to have specified newspapers selected by the board of supervisors and made official, there is a contest, within the meaning of the provisions quoted. *Runyon v. Haislet*, 90 Iowa, 379 (57 N. W. Rep. 902). A publisher is aggrieved when an adverse application, based upon a fraudulent list, is filed, and also when another paper is selected, if his should have been chosen. *Cory v. Hamilton*, 84 Iowa, 597 (51 N. W. Rep. 54). But the contest is triable, in the first instance, by the board of supervisors; and, when fraud is relied upon, the charge of fraud should be made and brought to the attention of the board before it determines the contest. It is not allowable to change the issues in the district court. *Ashton v. Stoy*, 96 Iowa, 197 (64 N. W. Rep. 804). In this case, fraud had not been charged when the board of supervisors acted upon the applications; and, so far as is shown, the papers submitted to it fully authorized, and even required, the decision which was made. The attempt of the plaintiff to charge fraud the day after the decision was rendered, was not sanctioned by the statute, and is contrary to the rules which must govern in such

cases. It is said in *Cory v. Hamilton, supra*, that no construction of the statute which would allow a charge of fraud for the first time, after the selection was made, is permissible. We do not say that a board might not, for good cause, set aside its decision, and grant opportunity for new objections to be made and additional evidence to be offered. Whether such a course of procedure should be permitted in any case we do not decide, but, if ever allowed, it should be for satisfactory reasons only. In this case, no excuse for the failure of the plaintiff to appear before the time fixed for the final consideration of the applications, and make objections, or ask for time in which to do so, is shown. If it be within the discretion of the board to grant or refuse a rehearing in such cases, no abuse of that discretion is shown in this case. Hence there was no ground for reversing the action of the board on appeal to the district court, and, as no issue of fraud was raised before the board, no issue of that character could be tried by the district court. It is only in case charges of fraud are made that the board is required to seek evidences of circulation other than that presented in the statements of the applicants. The district court should have confined its examination to the questions presented by the applications and statements which were before the board. If they were false or erroneous in any respect, the defect should have been presented to the board before it made the selection. The action of the board appears to have been fully warranted by the evidence submitted to it, and the judgment of the district court is erroneous, for reasons stated. It is therefore REVERSED.