HARRY A. NEWBURY, by His Next Friend, MAGGIE NEW-BURY, v. THE GETCHEL & MARTIN LUMBER AND MANUFACTURING COMPANY, Appellant.

**Master and Servant:** INJURY TO MINOR EMPLOYE. In an action for injuries while performing work more hazardous than that for which a minor was employed, an instruction that defendant was liable if he put plaintiff at more hazardous work than that for which he was employed, without explaining the dangers incident thereto, – which instruction fails to limit the rule given it to those dangers of which the master knew, or had reason to believe plaintiff was ignorant, and which were not so obvious as that, with care, they could have been known to plaintiff,—is erroneous.

**Fellow Servant.** The mere fact that one employe had authority over others, does not make him a vice-principal, or superior, so as to charge the master with his negligence, in a matter which it was not the employe's duty to attend to.

SAME. The rule that an employer who furnishes a proper machine is not liable to a servant injured by it while using it for an improper purpose, does not apply in the case of an injury to an inexperienced employe who was using the machine in obedience to the directions of a superior whom it was his duty to obey.

DUTY TO MINOR EMPLOYE. The rule of law, that the master is not liable to the employe for injuries, for improperly using, for one kind of work, for which proper machinery is furnished, machinery proper and sufficient for other work, has no application where such improper use is made by a minor employe, by order of a vice-principal who fails to explain that the machine is not the proper one for that kind of work.

**Contributory Negligence:** *Minority.* An instruction that plaintiff's minority could be considered only upon the question whether or not one of his age, experience and intelligence could, and did, know and appreciate the dangers incident to the work, is proper.

SAME. An instruction that the jury may consider plaintiff's minority in determining whether he had intelligence enough to appreciate the dangers that were involved in the employment in which he was engaged, and that they might also consider his age in

| | |
|---|---|
| 100 | 441 |
| 107 | 78 |
| 107 | 176 |
| 100 | 441 |
| f 109 | 527 |
| 100 | 441 |
| f 110 | 240 |
| 100 | 441 |
| 113 | 384 |
| 113 | 885 |
| 100 | 441 |
| 115 | 11 |
| 100 | 441 |
| 119 | 255 |
| 100 | 441 |
| 120 | 526 |
| 121 | 26 |
| 100 | 441 |
| 124 | 41 |
| 124 | 474 |
| 100 | 441 |
| 125 | 543 |
| 125 | 544 |
| 100 | 441 |
| 127 | 269 |
| 100 | 441 |
| 128 | 264 |
| 100 | 441 |
| 129 | 167 |
| 130 | 267 |
| 130 | 270 |
| 100 | 441 |
| 136 | 305 |
| 136 | 307 |
| 136 | 435 |
| 100 | 441 |
| 139 | 321 |
| 140 | 611 |
| 100 | 441 |
| 144 | 7 |

determining whether or not he was guilty of contributory negligence, is not objectionable, as tending to hold defendant liable because plaintiff's minority made one under whose direction he was working, a vice-principal.

ORDER FROM SUPERIOR: *Mistake.* A master is not liable for injuries to a servant caused by orders received from another, because the servant believed that he had been told to obey such orders, if such belief was not founded on fact.

DAMAGES: *Disfigurement.* In an action for personal injuries, disfigurement caused by the injury may be considered in assessing the damages.

DOCTOR BILLS. A minor living with his parents, cannot recover in an action for personal injuries, the cost of medical services, at least, until he has paid the bill, as the parents are primarily liable therefor.

Amendment in Trial: HARMLESS ERROR Where a petition laid damages at five thousand dollars, and asked judgment for ten thousand dollars, errors in instructing that plaintiff could not recover exceeding ten thousand dollars, and in allowing the petition to be amended, after verdict by laying the damages at ten thousand dollars, were harmless, where the court subsequently reduced the verdict to five thousand dollars.

COMPELLING REMITTITUR. Under such cirucmstances, the trial court may, in its discretion, require the plaintiff, in an action for personal injuries, to remit part of the verdict.

Instructions: APPLICABILITY: *Preponderance of evidence.* An instruction is properly given on a theory which is supported by some evidence, although the preponderance of the evidence may be to the contrary.

*Appeal from Polk District Court.*—HON. W. A. SPUR-RIER, Judge.

SATURDAY, DECEMBER 12, 1896.

ACTION at law to recover damages for personal injuries sustained by plaintiff while employed by defendant in its mill. Verdict and judgment for plaintiff, and defendant appeals,—*Reversed.*

*Guernsey & Bailey* and *Barcroft & McCaughan* for appellant.

*McVey & Cheshire* for appellee.

DEEMER, J.— The defendant is a corporation engaged in the manufacture of sash, doors, blinds, and other woodwork. In the month of September, 1891, the plaintiff, Harry A. Newbury, a boy seventeen years of age, entered into the employ of the defendant, to work in and about its factory. He was put to work in a room known as the "Sash and Blind Department," over which one Page was foreman. He was engaged as a sort of a "roustabout," and one of his duties was to clean up the refuse pieces of wood that accumulated from time to time in the room where he worked, and to saw them into proper lengths for kindling. Plaintiff had done this cleaning and sawing on an average of about once every other day from September, 1891, to some time in the month of May, 1892, at which time the accident happened which will be hereafter referred to. In the department where the plaintiff worked, there were two circular saws,—one known as a cut-off and the other as a rip-saw. The cut-off saw was mounted on a table which was about three and one-half feet wide, six feet long, and two feet five inches high. The saw was about twenty inches from the end of the table at which the operator stood. It projected a few inches above the table, and the lumber which the operator desired to saw was placed upon a sliding carriage, which carriage was then pushed, with the lumber thereon, against the saw, by the operator, who would place his hands either behind the sliding carriage, or upon the lumber, and at safe distance to the left of the saw. Plaintiff was instructed in the use of the saw, and was directed to place both hands to the left of the saw while using it, in order to avoid

danger. The rip-saw was mounted upon a similar table, but it had no carriage. To the right of this saw was a movable gauge, which could be adjusted so as to rip the lumber accurately and smoothly to the required width. Designed as they were for special purposes, the saws were differently constructed. The teeth of the cut-off saw were smaller than in the rip-saw, and so set that they made a wider path through the wood than did the rip saw. There was the same difference between them that there is in the ordinary cross-cut and rip-saws; the difference being due, of course, to the fact that one is made to cut across the grain of the wood, and the other with it. Prior to the time of the accident, the plaintiff had used the cut-off saw in cutting the refuse matter, but he had not always followed the directions of his employer with reference to the proper place of putting his hands while using this machine. On the —————— day of May, 1892, plaintiff was directed by the foreman of the room to clean up the shop and saw up the refuse matter for kindling. This he proceeded to do, and while so engaged, the foreman left the room. While engaged in his work, and during the absence of the foreman, one Garrity, who was employed about the mill, came to the plaintiff, and said he desired to use the cut-off saw, and plaintiff claims that Garrity ordered him to use the rip-saw for cutting up the kindling. Newbury claims that as he had never used the rip-saw for this purpose, he asked Garrity how to use it, and that Garrity, in response to this request, went to the saw, pushed back the gauge so it would not interfere with the lumber, started it, placed a handful of strips upon the table, and with one hand to the left and the other to the right of the saw, pushed them against it, and thus sawed the lumber into the required lengths for kindling. Plaintiff also claims that Garrity repeated this operation two or

three times and said to him (plaintiff) that that was the way to do it. Newbury says that he proceeded with his work as directed, and that (to quote plaintiff's own language): "I was standing at the north end of the table, looking south. The north end of the table is about three feet north of the saw. I was working on the rip-saw, cross-cutting, the same as Dick Garrity had told me to, and while doing that I picked up another handful of the strips, and went to push them into the saw, and pushed one handful through all right, and the next time I tried it they wedged on the saw. The rip-saw did not take out enough of the wood, but what it left there wedged on the sides of the saw, and it kind of made the saw jerk; and when the saw jerked it stopped it a little bit, and it caught a bigger stick, I suppose. I do not know exactly how it happened, but it was in that way. At the time the saw jerked there, my right hand was gripping the end of the lumber. The rip-saw was going up in the center of the table, and I had both hands on the wood, and ran it along like that, and my right hand was on the right hand end of the stick. In pushing it down that way, I was holding both ends, and they went down there and wedged, and it commenced to jerk; and I tried to push it on through, and it gave a heavy jerk, and threw my hand over on to the center of the saw, like that, and my hand was sawed off."

The negligence charged against the defendant is the order of Garrity to do the work with the rip saw, without informing him (plaintiff), who, by reason of his years, was without knowledge or experience sufficient to comprehend the character of the work, of the dangers incident thereto, and in ordering plaintiff to do the work he did so, without informing him that it was more dangerous than when done with the cut-off saw. It will be noticed that

plaintiff does not claim that he was not furnished with proper tools with which to do his work. The cut-off saw is conceded to be a proper machine for the purpose, and it was the duty of the plaintiff to use it, in the absence of proper directions to use another. The negligence charged is that of Garrity, in ordering him to do the work with the rip-saw, without informing the plaintiff of the dangers incident to its use. But defendant cannot be held responsible for this, unless it is to be charged with the negligence of Garrity. Whether it should be so charged or not, is the principal question in the case, to determine. We must look to the evidence relating to Garrity's authority. It appears that Samuel Martin was, and is, the vice-president and general manager of the defendant corporation. Adolph Vieser was mill manager at the time of the accident, and O. A. Page was foreman of the department where plaintiff was employed. Page had charge of all the men in the room where plaintiff worked, and had authority to direct them as to their work. He had no authority to employ workmen, nor did he directly discharge them. It appears, however, that his requests for discharge were generally, if not universally, respected and acted upon. Martin employed the plaintiff, and directed him to go to Page's department, where he would be informed by Page as to his duties, and that he must obey Page. Garrity was a workman in the same room with plaintiff. He did machine work, principally, although he occasionally worked at the bench, on blinds. There is also testimony tending to show that early in the spring of 1892, while Page was absent from the factory, Garrity directed the men in the department in which plaintiff was engaged, and that at other times, when Page was out of the room, Garrity called plaintiff to his assistance, and directed him in his work, and that, when Page was not present, Garrity was in charge,

and gave directions to the men.   It also appears that, for two or three days prior to the accident, Newbury was assisting Garrity, and working under his directions.   In order to charge defendant with knowledge of the fact that plaintiff was working under the direction of Garrity, the following testimony was delivered by plaintiff.   "Dick Garrity wanted me to do something there one day,—me and Law Martin, I think it was, that was working there at the same time,—and we were not going to do it; we were going to do something else; and Dick went and saw Page about it, and Page told us to go ahead; that Dick was an old hand there, and we should mind him; he would tell us what to do.   From that time to the time of the injury, I was in the habit of obeying Richard Garrity, when he ordered me to do it."   It also appears from the evidence that Martin was frequently present at the room where plaintiff worked; that he often noticed Garrity call Newbury to his assistance; and that he noticed Newbury was assisting, helping, and obeying Garrity; and that Garrity was the most experienced man in the department, except Page.

From this statement of the evidence, it will be seen that the controlling point in the case is the determination of the question as to whether the negligence of Garrity is to be attributed to the defendant. If Garrity was a mere fellow servant with plaintiff, then defendant is not responsible for his negligence.   If, on the other hand, he is and was a vice-principal, then defendant would be chargeable with his negligence.   It is conceded by all parties that Martin and Vieser were vice-principals.   Whether Page is to be so classed or not, is a more difficult question, but one not necessarily determinative of the case, for the real question is as to the authority of Garrity. Let it be conceded, for the purposes of the case, that Page was a vice-principal, and yet there is no liability,

for it is the negligence of Garrity, and not of Page, that is relied upon. What, then, was Garrity's authority? He had no power to employ or discharge men. The evidence tended to show that he had the right to call other employes to his assistance at all times, and that when Page was absent he was foreman of the shop, or of the department in which he worked. But as such foreman he had no more authority than usually devolves upon such a person. We have frequently held that the mere fact that one employe has authority over others, does not make him a vice-principal or superior, so as to charge the master with his negligence. *Peterson v. Mining Co.*, 50 Iowa, 673; *Foley v. Railway Co.*, 64 Iowa, 650 (21 N. W. Rep. 121); *Benn v. Null*, 65 Iowa, 407 (21 N. W. Rep. 700); *Baldwin v. Railroad Co.*, 68 Iowa, 37 (25 N. W. Rep. 918); *Hathaway v. Railway Co.*, 92 Iowa, 337 (60 N. W. Rep. 651). This rule, of course, relates to the negligence of the foreman, as such, and not to his want of care in doing those things which the master is obliged to perform by virtue of the relation existing between him and his servant. The rule is well settled, although not always correctly applied, that the liability of the master is made to depend upon the character of the act, in the performance of which the injury occurs, and not upon the rank of the employe who performs it. If it is one pertaining to a duty the master owes to his servants, he is responsible to them for the manner of its performance. But, if the act is one which pertains only to the duty of an operative, the employe performing it is a mere servant, and the master is not liable to a fellow servant for its improper performance. For instance, it is the duty of the master to make reasonable efforts to supply his employes with safe and suitable machinery, tools, and appliances, and thereafter to make like efforts to keep the same in repair, and in a safe and serviceable condition.

He is also required to exercise reasonable care in selecting and retaining a sufficient number of competent servants to properly carry on the business in which the servant is employed. It is another duty to make and publish such rules and regulations as are reasonably necessary to protect his employes against injury incident to the performance of their duties. And it is further the duty of the master who knowingly employs youthful, or inexperienced servants, and subjects them to the control of others, to see that they are not employed in a more hazardous position than that for which they were employed, and to give them such warning of their danger as their youth and inexperience demand. These are duties of which the master cannot relieve himself by showing that he delegated their performance to another servant, who was at fault in performing them. In the performance of his duties the servant, agent, or employe stands in the place of the master, and becomes a vice-principal, and the master is responsible for his negligence. *Fink v. Ice Co.*, 84 Iowa, 321 (51 N. W. Rep. 155); *Haworth v. Manufacturing Co.*, 87 Iowa, 765 (51 N. W. Rep. 68). There is no pretense that this case falls within either of the first three exceptions to the general rule of nonliability for the negligence of fellow servants above stated. But it is claimed that it does come squarely within both exceptions stated in the last; that is to say, that the defendant, through its servant and agent, Garrity, ordered plaintiff into a more hazardous place to work than that for which he was employed, and that Garrity gave him improper and negligent instructions as to how to use the saw, and failed to warn him of the dangers pertaining to its use. Now, if it be found that Garrity had authority to direct the plaintiff as to where and how he should work, and it is further shown that he ordered him into an employment

more hazardous than that for which he was engaged, or that Garrity failed to give him such warning of his danger as his youth and inexperience demanded, then the defendant would be responsible for Garrity's negligence, and plaintiff would be entitled to recover, provided he showed himself free from contributory negligence. Upon these propositions the court below gave the following instructions: "If you find, under the directions given you in the last preceding instruction, that the order or direction made by Garrity to the plaintiff, to use the rip-saw for the purpose it was being used at the time of the injury, was the order of the defendant, then you are further instructed that it is the duty of the master who knowingly employs a youthful servant, and subjects him to the control of another servant, to see that he is not employed in a more hazardous position than that for which he was employed, and to give him such warning of his danger as his youth or inexperience demands. And if you find that the use of the rip-saw, for the purpose and in the manner it was being used by the plaintiff at the time of the injury, was more hazardous than the use of a cross-cut saw, when used for the same purpose, or that the use of the rip-saw, in the manner and for the purpose it was being used at the time of the injury, was more hazardous and dangerous than when used for ripping lumber, then it was the duty of the defendant to explain, or have some competent person explain, to the plaintiff, the extra hazard or danger, if any, connected with the operation of said rip-saw when used in the manner and for the purpose it was being used by the plaintiff at the time of the injury. And if the defendant failed so to explain, or cause to be explained, to the plaintiff, such increased hazard or danger, if any, then the defendant, in so failing to do, will be deemed negligent, and liable to the plaintiff, if such order to use the rip-saw was the direct and

immediate cause of his injury, unless you find from the evidence that the plaintiff, at the time of the injury, had acquired knowledge from other sources, or by experience, of such extra hazard or danger in using said rip-saw in the manner and for the purpose it was used at the time of the injury." This instruction is criticised because, it is argued, it states the duty of the master too broadly. It is contended on the part of defendant that the duty of the master is to warn as to such dangers, and such only, as he has reason to believe, as an ordinarily-prudent man, are not known to the servant. The instruction quoted relates to the duty of the master who orders his servant into a more hazardous position than that for which he was employed, and fails to explain to him the dangers incident to his work. And, in so far as it makes this duty absolute, it seems to us that the instruction is wrong. The correct rule is as stated in the case of *Yeager v. Railway Co.*, 93 Iowa, 1 (61 N. W. Rep. 215), as follows: "The duty of the master to instruct and warn the servant only arises as to dangers which the master knows, or has reason to believe, the servant is ignorant of. It does not arise as to dangers known to the servant, or that are so open and obvious as that, by the exercise of care, he would know of them;" citing *Reynolds v. Railroad Co.* (Vt.) (24 Atl. Rep. 135); *Railway Co. v. Davis* (Ark.) (18 S. W. Rep. 629); *Dysinger v. Railway Co.* (Mich) (53 N. W. Rep. 825); *Levy v. Bigelow* (Ind. App.) (34 N. E. Rep. 128); *Railroad Co. v. Henderson* (Ind. Sup.) (33 N. E. Rep. 1021); *Merryman v. Railway Co.*, 85 Iowa, 634 (52 N. W. Rep. 545); *Downey v. Sawyer* (Mass.) (32 N. E. Rep. 654). In view of the evidence, it was highly important that the jury be correctly informed as to when, and under what circumstances, it was the duty of the master to warn his servant of the dangers incident to his work.

II.   The eighth instruction is complained of.   It is as follows:   "Further, regarding the relation of fellow servants, you are instructed that the master may so act, and instruct his servants to obey one of their number in the performance of their work for the master, that in the performance of such duties so required by the master, the servant so authorized to transact the business of the master in the performance of such duties for the time, as to such servants who have received of the master a direction to obey, becomes the agent or representative of the master, in such sense that the master is liable for the negligence of the servant so invested with authority, while in the performance of the duties directed in the manner aforesaid by the master.   And if you find from the evidence that Samuel Martin, the vice-president and general manager of the defendant corporation, told the plaintiff to obey Foreman Page, and that Page would tell him what to do, and that thereafter Page told the plaintiff, prior to the time of the injury, to obey the orders or commands of Richard Garrity, and that Martin knew that plaintiff was under the direction of Richard Garrity, and required to obey the orders and instructions of Garrity, and acquiesce therein, then the said Garrity, when he told the plaintiff to use the rip-saw in the manner and for the purpose it was being used at the time of the injury, was the agent or representative of the defendant corporation, in such sense that the order of Richard Garrity to use the rip-saw in the manner and for the purpose it was being used at the time of the injury would be the order of the defendant to use the said rip-saw."   The objections to it are that there is no evidence that Page told plaintiff that he should obey the orders and commands of Garrity, or that Martin knew that plaintiff was under the direction of Garrity, and was required to obey his orders.

These objections are without foundation, for we think there is evidence to establish both propositions. It may be that the preponderance of it is to the contrary, but we are not dealing with a question as to the weight of the evidence. It is also contended that the instruction is wrong for the reason that it holds the defendant to liability simply because Garrity was in control of the work as foreman or temporary overseer of the work. If we were to consider the instruction apart from the evidence in the case, it is likely that it would be condemned. But, as applied to the evidence, it was a correct statement of the law as we have announced it in the first paragraph of this opinion.

III. The ninth instruction was as follows: "As before stated, it is conceded that there was not any actual direction given by Page to the plaintiff, at the time of the injury, to obey Garrity in reference to the work at which he was engaged when injured, but it is claimed by the plaintiff that he was acting in obedience to prior directions from Martin to obey Page, and from Page to obey Garrity; and in determining whether or not plaintiff is justified in claiming that he was thus acting under the direction of the defendant, in obeying Garrity, you are to consider all the evidence in relation to that matter; what, if anything, was said by Martin to plaintiff in relation thereto; what, if any, knowledge Martin had in relation to Garrity commanding or directing the plaintiff; what, if anything, he said and did in relation thereto; what, if anything, was said by Page to the plaintiff in relation to obeying Garrity; whether such commands, if any, were for the plaintiff to obey in particular instance or instances, or in every instance; and all facts and circumstances in evidence bearing upon said matter. And if, from the consideration of all the evidence and the circumstances, you believe that

Martin commanded the plaintiff to obey Page in all instances, and that Page commanded plaintiff to obey Garrity in all instances, or that Martin and Page gave plaintiff such commands to obey as a reasonably prudent boy of the age and experience of the plaintiff at that time would understand and believe to be an order to obey Page and Garrity in every instance, and plaintiff did so, in good faith, believe, then you would be warranted in finding that he was acting under the direction of defendant, in obeying Garrity, but not otherwise." This instruction is criticised because it is said there is no evidence to support it. In this we cannot agree with counsel. Properly construed, it had evidence in its support, and it is not subject to the criticism made. The latter part of the instruction is also challenged because, it is said, it makes the defendant liable for the plaintiff's mere belief as to the orders given him. We think this objection is well taken. An order designed for one purpose, and misunderstood for another, would not be an order for the latter purpose. *McCarthy v. Railroad Co.,* 83 Iowa, 485 (50 N. W. Rep. 21).

IV. Appellant's counsel make the following subheading to one division of their argument: "The Fact that the Plaintiff was a Minor does not Make Garrity a Vice-Principal."

This is a proper statement of the law, but we fail to find where the court below held anything to the contrary. The instructions tell the jury that they may consider the plaintiff's minority, in determining the question as to whether he had intelligence enough to appreciate the dangers that were involved in the employment, and that they might also consider the plaintiff's age, in determining whether or not he was guilty of contributory negligence. These instructions do not tend to hold the defendant

to liability because the minority of the plaintiff made Garrity a vice-principal.

In this connection, we may consider the objection lodged against the eleventh instruction. This part of the charge related to the subject of contributory negligence, and told the jury, in effect, that they should consider the plaintiff's minority solely upon the question as to whether or not one of his years and experience and intelligence could and did know or appreciate the danger, if any, there was in operating the rip-saw. This instruction was in accord with the voice of authority, and was properly given. *Merryman v. Railway Co.*, 85 Iowa, 634 (52 N. W. Rep. 545); *McMillan v, Railway Co.*, 46 Iowa, 231; Beach, Contrib. Neg., section 136.

V. Appellant's counsel say, in argument, that the defendant, having furnished the proper machine, is not liable, where the servant makes use of it for an improper purpose. This statement announces a correct rule of law. But does it apply to the case at bar? Here there was evidence tending to show that the plaintiff was not informed by any one that the cut-off saw was the one, or the only one, to be used in cutting the kindling; and that he was ordered to obey the directions of Page, and, in Page's absence, to obey Garrity. It was plaintiff's duty to obey all orders given him by his superiors, unless their performance involved a hazard which no ordinarily prudent person would have subjected himself to. In obeying his superiors, he had a right to assume that they would subject him to no greater risks than his contract of employment contemplated, and that, on account of his age and inexperience, they would furnish him proper machines, and give him the needed information as to how to operate them. He had no knowledge as to what machines he should use, except as he was informed by his superiors. And, in

using the machines which they directed him to operate, he was but doing a duty to his employers. The rule of law relied upon by appellant's counsel is not applicable to the case. Our conclusions on this branch of the case find some support in the case of *Sprague v. Atlee*, 81 Iowa, 1 (46 N. W. Rep. 756).

VI. It is said that the evidence conclusively shows that plaintiff was guilty of contributory negligence, and that the verdict is contrary to the sixth instruction, which related to this subject. In view of a new trial, it is better that we express no opinion upon these matters.

VII. The court instructed the jury that, if they found for plaintiff, they could allow him as damages any sum not exceeding ten thousand dollars.

It appears from the record that the original petition asked for but five thousand dollars damages. Afterwards, by leave of court, this petition was amended so that the prayer was for ten thousand dollars, but the clause in the petition stating plaintiff's damages was not amended. This stood, as in the original petition, at five thousand dollars. The verdict was for eight thousand dollars. The court, however, reduced it to five thousand dollars; and after the verdict was returned, the plaintiff, by leave of the court, filed an amendment to his petition, stating that he was damaged to the amount of ten thousand dollars. The defendant complains of the instruction given by the court, and of the permission given the plaintiff to amend. It is, no doubt, true that plaintiff could not cover the defect by amendment after verdict. See *Cox v. Railway Co.*, 77 Iowa, 478 (42 N. W. Rep. 429). But it clearly appears that no prejudice resulted to defendant by reason of the ruling. The court reduced the verdict to the sum of five thousand dollars, and in so doing, not only covered

the error with reference to the amended pleading, but also the error in the instruction.

VIII. The instruction with reference to the measure of damages tells the jury that they may consider plaintiff's disfigurement of person as an element.

This is said to be error. We do not think so. We have uniformly held that this may be considered in personal injury cases. And such seems to be the general rule. 1 Sutherland, Damages, section 158, and authorities cited; Thomas, Neg., p. 461c.

IX. Another element of damages, which the court permitted the jury to consider in the event they found for plaintiff, was for medical services rendered. It appears that the doctor who attended the plaintiff, charged eighty-one dollars for his work. Whether this charge was made against plaintiff, or his father, does not appear. But as the father, or, in the event of his death, the mother, was primarily liable for the bill, we must assume it was charged to him or her. And, if so charged, then the plaintiff cannot recover this item. But, if not so charged, we do not think plaintiff was entitled to recover this item, under the showing made. The liability was primarily that of the father. He was liable for the support and maintenance of his minor son, and it must be presumed that he will meet his obligation. Plaintiff, as a minor, cannot recover for these services; not, at least, until he has paid the bill. *Tompkins v. West* (Conn.) (16 Atl. Rep. 237).

X. Misconduct on the part of the plaintiff's attorney, was one of the grounds for a new trial. We have examined the record with reference to this matter, and find there is no reason for interfering with the discretion of the trial court in overruling the motion on this ground.

XI. Some other questions are discussed by counsel. But as they are not likely to arise on another trial, we do not consider them.

XII. Plaintiff appeals from the ruling of the court, requiring him to remit three thousand dollars of the verdict. We do not think he is in a position to complain—*First*, on account of the condition of the pleadings, to which we have referred; *second*, because this matter rests peculiarly within the discretion of the trial court, and we see nothing to indicate that he abused this discretion. For reasons pointed out, the judgment of the district court is REVERSED.