J. O. MILLER, Appellant v. HART-PARR COMPANY OF CHARLES CITY, IOWA, Appellee.

**Master and servant:** NEGLIGENCE: EVIDENCE. In an action for injuries sustained by plaintiff caused by the fall of a pile of angle irons, which plaintiff with others were unloading from a car, the evidence is reviewed and held insufficient to show that the nature or character of the ground upon which supports for timbers for the irons were laid was a contributing cause of the injury.

**Same:** ASSUMPTION OF RISK. Where a foundation, made of timbers placed upon the ground and used for holding piles of angle irons, had been used before the time in question as a base upon which to pile structural iron, and it did not appear from the evidence that there was anything in its condition that would charge the master with knowledge that the place was unsafe, or that it was unfit for the purpose to which it was put, and there were no apparent hazards connected with its use, the danger, if any, was as apparent to the employee as to the master and would therefore be an obvious risk which the employee assumed.

**Same:** CAUSE OF ACCIDENT: EVIDENCE. While proof of causal connection may be direct or circumstantial, the evidence must be something more than consistent with a theory as to the cause of an accident. Thus in an action for injuries caused by the fall of angle irons, which were being piled upon the ground on a foundation of timbers, where it cannot be determined from the evidence whether the fall was caused by the breaking of the timbers or whether the timbers were broken by the fall, either theory being consistent with the evidence,

it cannot be said, nor would a jury be warranted in finding, that one cause was more probable than the other.

Same: SAFE PLACE AND APPLIANCES: EVIDENCE. Plaintiff was injured 4 by the fall of a pile of iron bars, which he and other employees were engaged in piling. Defendant contended that the fall of the iron was caused by the use of strips of wood for binding the bars in the pile. The evidence showed that the workmen were acting under general orders to pile the irons separately and bind them with strips of wood; that they were left in entire charge of the work, and that plaintiff generally selected the strips which were used and might have used larger and stronger ones; that the condition and safety of the place was continually changing as the work progressed, but contained no hidden danger. *Held*, insufficient to show defendant negligent in failing to direct the use of larger and stronger binding strips.

Same: CAUSE OF ACCIDENT: EVIDENCE. Plaintiff's statement that he 5 thought the accident was caused by the breaking of the binding or cross strips used in piling the irons was merely an opinion and not admissible in proof of the cause; and even though he did not know the cause that fact was not an admission against his theory of the accident, but if the facts and circumstances made it reasonably probable that he was correct, and his theory was based on facts amounting to negligence of defendant, the issue was for the jury.

Same: ACTS OF VICE-PRINCIPAL: LIABILITY OF MASTER. Where the 6 order and direction of a vice principal do not reach to and control the particular manner in which a servant performs his work, but this is within the discretion of the servant, the master is not chargeable with the ensuing consequences.

Same: ASSUMPTION OF RISK. When a servant of ordinary experience 7 knows the dangers naturally incident to his work, and the hazard is as apparent to him as to the master, he assumes the risk.

*Appeal from Floyd District Court.*—HON. C. H. KELLEY, Judge.

MONDAY, DECEMBER 15, 1913.

ACTION for damages based upon alleged negligence of the defendant. The trial court directed a verdict for the defendant, and plaintiff appeals.—*Affirmed.*

*Wade, Dutcher & Davis*, and *J. C. Campbell*, for appellant.

*J. E. E. Markley*, and *Ellis & Ellis*, for appellee.

WITHROW, J.—I. The plaintiff, William Miller, was in 1910 in the employ of the defendant as a yardman about its factory and had been so employed for a period of four or five weeks prior to the time of receiving the injuries complained of in the action, which were sustained by him on September 22d. He was a man thirty-four years of age and, upon entering the employ of the defendant, gave his occupation as an engineer. He had previously been employed in various ways, sometimes running a stationary engine, did some carpenter work, assisted in threshing and like labor, without regular occupation or employment in any particular line.

On the 22d of September, 1910, while engaged in piling some structural steel bars, known as angle irons, which work he was directed by one Noble to perform in connection with another employee of the defendant, the pile of iron fell, crushing plaintiff's leg and occasioning to him severe injuries. Negligence of defendant is charged as follows: (1) In not having a proper and suitable place to pile the beams and in requiring them to be piled upon a rough and uneven surface, which was not solid or permanent. (2) In furnishing a base upon which to pile the angle irons which was insufficient for the purpose. (3) In not permitting the plaintiff and his co-employee to pile the same in a manner which would be solid and in furnishing improper pieces of boards for crosspieces. (4) In failing to furnish to plaintiff a reasonably safe place to work and reasonably safe material with which to perform the duty assigned to him and his co-employee. (5) In failing to have a prescribed method or rule which would be reasonably safe in piling the angle irons. The defendant denies negligence, pleads contributory negligence of the plaintiff and the assumption of the risk. At the conclusion of the evidence

offered on the part of the plaintiff, the defendant moved for a directed verdict in its favor, which motion was sustained, and, from such ruling and the judgment entered against him for the costs, the plaintiff appeals.

We must therefore somewhat in detail set out the evidence to determine the correctness of the ruling of the trial court.

II. It appears that the place where the appellant and his co-employee were directed to erect the pile was near a railroad track, from the car standing on which the irons were lifted by a crane and swung around over and lowered to the place where they were to be laid. The place was upon the grounds of the appellee. The ground was not entirely level at this point, its fall being but slight, sloping towards the west and south about one inch in eight feet and, as one witness stated, hardly noticeable. But to make a stable foundation timbers had been at some previous time placed upon the ground, and the foundation thus provided was level. The timber used for the foundation or base was a 2x4 flat on the ground at the east, fifteen feet west a 4x4 lying on the ground, and at the west side a 2x6 with a 2x4 on top of it, blocked with 4x4 pieces at the south end of either pine or hemlock. It is claimed that the ground at the south and west side was soft and yielding and therefore afforded no sufficient foundation or base upon which to rest the timbers and support the weight placed upon them. Prior to the time of the work in which he was immediately engaged, the appellant had assisted in piling other structural iron but had not worked with iron of the dimensions he was handling at the time of his injury. On the day preceding the injury the appellant had been directed by one Noble, who for the purpose of the case, and as shown by the evidence, was the foreman, to go with other men to assist in unloading and piling angle irons near the railroad track. They did so, and for the balance of the day piled them in the way that had been customary with such material. Dur-

1. MASTER AND SERVANT: negligence: evidence.

ing the forenoon of the next day Noble came to where the irons were being piled and directed that the pile should be made in a different manner that he might be able to measure each piece. The angle irons are described in evidence as being V-shaped, about three inches wide on each side, twenty-eight to thirty feet long, each weighing from two hundred and thirty to two hundred and fifty pounds. The previous method of piling angle irons had been to lay them close together, fitting one piece into another. The plan directed by Noble was to make three piles, about four inches apart, and, as stated by the plaintiff, he said: "After you get a few on top of one another like that, you can take some boards and put across them, and then lay some more on top so that it will bind them together." "He said we could pick up some of the boards around there." Following such directions the appellant and his co-employee continued the work, using for binders pieces of board which were picked up by him from such as were lying near by; the dimensions of the board so used being about 1x6 inches, and of a length about equal to the width of the pile, or about two feet. Three piles were being laid, one bar on top of another, and, when nine of the angle bars were placed in each pile, the boards used for binding were laid across the piles, one at each end and one in the middle, and these then in part supported the weight of the bars which were laid above. The piling was continued until there were three piles of twenty-seven each about completed when, as the last iron was being lowered by the crane to be placed in position, but before it had in any manner come in contact with any part of those which had been laid, the three piles fell, and the appellant was injured by some of the bars which fell upon him and caught and crushed his leg. It appears from evidence that the bars were piled towards the north side of the foundation or base which we have described as consisting of the timbers laid upon the ground. The evidence showed that after the piles had fallen some of the wooden crosspieces had broken, and also that both timbers

in the west base had broken, by reason of which the irons, in the language of a witness, scattered more at the west end than at the east. From such scattering or spreading the injury of appellant resulted. There is no evidence that the timbers used as the base were broken or in any manner unsafe in themselves before the accident, and the only evidence connecting the base timbers with the accident is that the west ones were afterwards found to be broken.

The claim of the appellant is that the support or ground upon which such timbers rested, especially at the southwest, was of such nature as to be unsafe and unfitted as a base upon which to build heavy piles of iron. We have considered carefully the evidence bearing upon this phase of the case; and while it tends to show that after a rain there was a nearby spot or place where the water for a time remained in a little pool, such is not by the evidence shown to have affected the situation at the time of the injury, nor can we find in the evidence that which would warrant the inference that such alleged condition was a contributing cause to the accident.

III. It is claimed by the appellant that the foundation consisting of the timbers and the manner in which they were laid did not constitute a reasonably safe place to work, which 2. SAME: assumption of risk. it was the duty of the master to furnish, and that his injury resulted because of such failure. It does not appear in the evidence that there was such a condition as would charge the master with knowledge that it was in any way unsafe. The foundation had before that time been used as a base upon which to pile structural iron. There had been nothing prior to the time of the accident to indicate that it was unfit for the purpose to which it was put. There were no apparent hazards connected with its use for piling iron upon it; but, assuming, as claimed by appellant, that it was unsafe, such was as apparent to the appellant as to his employer and would therefore be an obvious risk which he would have assumed. *Olson v. Produce Co.*, 118 Iowa, 55; *Paulson v. Bettendorf Axle Co.*, 146 Iowa, 406; *McLaughlin v. Atlantic Mills*, 27 R. I. 158 (61 Atl. 42).

IV. Whether the fall of the piles resulted from a break in the timbers of the base, or whether they were broken because of the fall, cannot be determined as a probability from the evidence. Either theory is equally consistent under the evidence, and it cannot be said, nor would a jury be warranted in the conclusion, that one cause was more probable than the other. While proof of causal connection may be direct or circumstantial, the evidence must be something more than consistent with a theory as to the cause of the accident. *O'Connor v. Railway Co.*, 129 Iowa, 638; *Breen v. Iowa Central Ry.*, 159 Iowa, 537.

3. SAME: cause of accident: evidence.

V. In building the piles the appellant and his co-employee acted without more general directions than that they were to be laid separately and were to be bound. The manner of binding was stated only generally, and it appears without conflict that the appellant in most instances, if not entirely, determined upon and selected what character and strength of boards was suitable for such purpose. The evidence tends to show that some of the crosspieces or binders were broken, and it is a theory of the case, perhaps most strongly held by the appellee, that the fall was occasioned in part, if not entirely, by the use of binders of insufficient strength. It was claimed by the appellee that the evidence showed that near by were boards or pieces of timber of greater thickness and strength which the appellant might have used, and, such appearing, negligence cannot be charged against it for a failure to supply other than that which actually was used. As we have already stated, the appellant and his co-employee were left in entire charge of the work, the condition and safety of which was continually changing because of their own labor. They were erecting a pile of iron in such manner and to such height as to carry with it the evident knowledge that it might, unless properly guarded, topple and fall. The means by which such was being done was entirely under their control. They were

4. SAME: safe place and appliances: evidence.

not using a piece of machinery nor appliances furnished to them by the master, but with the material at hand, part of which was furnished by the master and part furnished by themselves, were erecting a structure, denominated by the trial court as being of the character of a "cob house," and which, unless properly laid and guarded, would be unstable. The means for so doing were entirely within themselves. The work contained no hidden danger, and we fail to find in the evidence that which constitutes negligence in the respect charged.

VI. The appellant on cross-examination was asked if he had not said he thought the fall was caused by the breaking of the crosspieces, and answered that he had so said. This cannot be taken as proof of the cause,

5. Same: cause of accident: evidence.

the answer being no more than appellants' opinion which might be at variance with the actual facts. In discussing this evidence which evidently had been adduced as tending to show what was the cause of the accident, counsel for the appellant in their brief say, "The plaintiff does not pretend to know what caused the pile to fall." This is not to be construed as an admission against their claim, for although one may not know, if the facts and circumstances in support of a theory make it reasonably probable that it occurred in a certain way, such would require that it be submitted to the jury, if that way was based on facts which amounted to negligence of the defendant.

VII. It is urged that in what he did the appellant acted under the direct orders of Noble, whom it was claimed was a vice principal. Our conclusions are such that, regardless of what may have been Noble's relation gen-

6. Same: acts of vice-principal: liability of master.

erally to the appellant, his directions did not reach to and control the appellant in the particular manner in which he did the work, and therefore, as to such, he could not be held to have been a vice principal, charging the master with the ensuing consequences. *Newbury v. Manufacturing Co.*, 100 Iowa, 441.

VIII. The evidence shows that the appellant was a man of ordinary experience; that he knew and realized the weight of the angle irons and the pressure which would naturally follow their being piled upon one another; and that whatever hazards and dangers there were in the work were as apparent to him as to the master.

7. SAME: assumption of risk.

Upon the whole case we think the ruling of the trial court was correct, and it is *Affirmed.*

WEAVER, C. J., and DEEMER and GAYNOR, JJ., concur.