CHARLES ASHTON, *et al.*, v. H. W. STOY, Appellant.

**Selection of Official Paper: PRACTICE.** Fraud in a contest over such selection should be alleged before the board holds the hearing and makes the selection.

**SUBSCRIBER.** One to whom a publisher sends a newspaper without his consent, at the instance of a third person who pays the subscription for a year for advertising purposes, is not "a *bona fide* subscriber" within Code, 307, which requires the selection of the paper having the largest number of *bona fide* yearly subscriber within the county.

**APPEAL.** The district court must try the case on the subscription lists filed with the auditor and they cannot be amended by adding omitted subscribers.

**MOTION FOR MORE SPECIFIC STATEMENT: WAIVER.** Overruling such a motion is not waived where no subsequent pleading is filed.

*Appeal from Guthrie District Court.*—HON. J. H. APPLE-GATE, Judge.

THURSDAY, OCTOBER 24, 1895.

The plaintiffs are the publishers of the *Guthrian* a weekly newspaper published in Guthrie county. In January, 1893, they applied to the board of supervisors of that county to have their newspaper selected as one of the official newspapers of the county under the provisions of section 307 of the Code. The board denied the application, and selected the *Guthrie Times*, a weekly newspaper published in the county by the defendant. From the decision the plaintiffs appealed to the district court. That tribunal found in favor of the plaintiffs, and adjudged the *Guthrian* to be one of the official papers of the county for the year named. From that judgment the defendant appeals.—*Affirmed.*

*E. W. Weeks* for appellant.

*E. R. Sayles* for appellees.

Robinson, J.—The list of subscribers within the county filed by the plaintiffs contained nine hundred and eighty-six names, of which ninety-one were stricken out by the court, leaving eight hundred and ninety-five which were counted as those of *bona fide* yearly subscribers for the *Guthrian*. The list filed by the defendant contained one thousand and twelve names, of which one hundred and nineteen were stricken out, leaving eight hundred and ninety-three to be counted for the *Times*, or two less than the number counted for the other paper.

I. In the district court the defendant filed a motion to require the plaintiffs to state more particularly the manner in which they were aggrieved by the action of the board of supervisors, which was overruled, and of that ruling the defendant complains. It is said that, if the ruling was erroneous, the defendant waived the error by proceeding to trial. There was nothing in what he did inconsistent with his right to insist upon his exception to the ruling. He did not file any subsequent pleading, and therefore does not come within the rule of *Mann v. Taylor*, 78 Iowa, 357 (43 N. W. Rep. 220), and other cases cited by the appellees. But we do not find that the ruling was erroneous. A contest of this kind is triable in the first instance by the board of supervisors of the county in which it is instituted, and formal pleadings are not in all cases required. *Runyon v. Haislet*, 90 Iowa, 376 (57 N. W. Rep. 902). The issues should be presented to the board for determination, and, when fraud is charged, it should be alleged before the hearing is had and the selection of papers is made. *Cory v. Hamilton*, 84 Iowa, 597 (51 N. W.

Rep. 54). The jurisdiction of the district court is appellate (Code, section 307) and it should try and decide the case made before the board of supervisors. Without deciding that pleadings may not be required by the district court in any case, we reach the conclusion that there was no error in not requiring them in this one.

II. The chief contention on this appeal is based upon the action of the district court in striking from the *Times* list thirty-six names which were furnished to the defendant under an agreement made with one W. H. Stiles, but which the court found were not names of *bona fide* yearly subscribers. The facts in regard to them are substantially as follows: In December, 1892, the defendant and Stiles entered into an agreement in writing, a copy of which is as follows: "This article of agreement, made and entered into by and between H. W. Stoy, of the first part, and W. H. Stiles, of the second part, all of Guthrie county, Iowa, witnesseth: That, for and in consideration of the sum of twenty-five dollars and other valuable consideration, the party of the first part hereby agrees to furnish party of the second part fifty copies of the *Guthrie Times* for one year, from and including Vol. 10, No. 20, to be sent to such persons in Guthrie county, Iowa, as party of the second part shall direct; also to furnish party of the second part one column of advertising in said paper for same time as above stated, party of the second part to have the privilege of changing the said column at such time and in such manner as he may direct. Said advertisement shall occupy the 1st column or the upper half of the 1st two columns of the 1st page of the said *Guthrie Times*. Dated this twenty-seventh day of December, 1892. H. W. Stoy. W. H. Stiles." After that agreement was made Stiles handed to the defendant a list which contained the names of forty-four persons, who appear to have been residents of Guthrie county. The names were

placed on the *Times* subscription list, and a copy of the paper was sent to each of the persons thus designated, before the meeting of the board in January. Stiles then sent to each of them a communication of which the following is a copy, omitting the name of the person addressed: "Guthrie Center, Iowa, Dec. 27, 1892. Dear Sir: Upon retiring from the office of county attorney, I have established a real-estate office in connection with my other business. Knowing the value of a kind word from personal friends when occasion offers, I have taken the liberty to address you as such friend, hoping you may be able to throw some business in my way. As I do not feel like asking something for nothing, I have made arrangements with the publisher of the *Guthrie Times* to furnish a paid-up subscription to *Times* for one year as a partial consideration for any aid you may extend in my behalf among your neighbors. You will find inclosed a receipt in full for one year to the *Times*. You will find my column advertised in the paper. Respectfully, etc., Wm. H. Stiles." With each communication was sent a receipt, which, omitting name of beneficiary, was in the following form: "Guthrie Center, Iowa, Dec. 27, 1892. Received from Wm. H. Stiles, for ———, one and no-100 dollars for subscription to the *Times,* from Vol. 10, No. 20, to Vol. 11, No. 20, year ending January 1, 1894. H. W. Stoy." The names of the persons to whom these instruments were sent were duly inserted in them. We do not find that there was anything illegal or unwarranted in the transaction considered by itself. It appears to have been a legitimate effort on the part of Stiles to increase his business, and the defendant had the undoubted right to be a party to it. The question to determine, however, is whether the persons whose names were placed on the *Times* list by virtue of that transaction without any ratification on their part of

what was done thereby become *bona fide* subscribers
for the paper.   Section 307 of the Code, as amended
(McClain's Code, section 428), requires the board of
supervisors of each county, at the January session of
every year to select two newspapers published within
the county, having the largest number of *bona fide*
yearly subscribers within the county, to be the official
papers of the county for that year.   The reason for
selecting the papers having the largest number of
subscribers is to secure as large a general circulation
of the official publications of the county among its
citizens as is practicable in two newspapers.   It is
therefore provided that the persons to whom the
papers are sent shall be subscribers in good faith for
a year at least, and not persons to whom the papers
are sent temporarily for the purpose of increasing
their circulation.   The primary meaning of the word
"subscriber" is to write underneath, as one's name;
but it also means to give consent to something written,
to assent, to agree; and a subscriber is defined to be:
"(1) One who subscribes; one who contributes to an
undertaking by subscribing. (2) One who enters his
name for a paper, book, map, or the like."
4       Webster Int. Dict.   To become a subscriber to
a newspaper includes some voluntary act on
the part of the subscriber, or something which is in
effect an assent by him to the use of his name as a
subscriber.   A person to whom a paper is sent
without his knowledge or consent, either expressed
or implied, is not a "subscriber," within the meaning
of the statute.   Of the forty-four persons whose names
were furnished to the defendant by Stiles, but few
are shown to have approved the sending of the paper
to them, and it is not certain that any had done so
when the board of supervisors was required to make a
selection of newspapers, while some refused to receive
it.   We are of the opinion that the district court was

fully authorized by the evidence to strike from the list of the *Times* the names in question.

III.   Complaint is made of the action of the court in refusing to permit the defendant to amend his list by adding thereto the name of a subscriber which had been omitted.   We think the ruling was correct.   The district court was required to try the case on the lists as deposited with the county auditor, and the proposed amendment was not allowable.   But, if this were not true, the error would have been without prejudice, as the addition of the name to the *Times* list would not have changed the result.   We do not find any error in the proceedings of the district court, and the judgment is *affirmed*.