G. F. KANE, Appellant, v. CARL C. STURGIS, Appellee.

NEWSPAPERS: Official Newspapers—Selection—Compliance and Noncompliance with Statute. In a contest between two rival publishers as to which newspaper should be selected as the official newspaper of the county, the award must (in the absence of any other issue) be made to the publisher whose verified statement shows, as required by statute, his bona-fide *yearly* subscribers, in preference to the publisher whose statement shows a larger list of subscribers, but fails to show whether they are *yearly* subscribers.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

OCTOBER 24, 1924.

CONTEST between the publishers of newspapers as to which should be selected as the county official paper. G. F. Kane, the publisher of the Anthon Herald, appealed from the action of the board of supervisors in selecting the Correctionville News. The district court affirmed the action of the board, and Kane prosecutes this appeal.—*Affirmed.*

*Griffin, Griffin & Griffin,* for appellant.

*Earl Edmunds* and *Snyder, Purdy, Gleysteen & Harper,* for appellee.

VERMILION, J.—The board of supervisors of Woodbury County was required, at its January, 1923, session to select three newspapers published in the county as county official newspapers. Supplemental Supplement to the Code, 1915, Section 441.

The statute required the selection of the three papers showing, in the manner pointed out in the statute, the largest number of bona-fide yearly subscribers living within the county, not more than two of which papers should be published in the same town. The Sioux City Journal and the Sioux City Tribune were selected as two of the three, without question, leaving the third to be named from among papers published outside Sioux City.

The appellant, publisher of the Anthon Herald, and appellee, publisher of the Correctionville News, each deposited with the county auditor, within proper time, verified statements giving the names of subscribers receiving their respective papers and living within the county. No objection or claim of fraud was made to either list before the board, and no pleadings were filed by either party throughout the proceedings. No evidence was offered in either hearing, save the lists and accompanying affidavits and a stipulation of the parties that the dates appearing on the lists indicated the time up to which the subscribers had paid their subscriptions.

The statute in question is as follows:

"In case of contest, the applicants shall each deposit with the county auditor, on or before a day named by the board of supervisors, a certified statement, subscribed and sworn to before some competent officer; giving the names of the several post offices, and the number and the names of the bona-fide yearly subscribers receiving their papers through each of said offices living within the county; such statements to be in sealed envelopes, and opened by the county auditor upon direction of the board of supervisors; and the two applicants thus showing the greatest number of bona-fide yearly subscribers living within the county shall be the county official papers, * * *. In case a contest is made by a publisher, the board shall receive other evidence of circulation, and if it appears that any certified statement filed is fraudulent, or contains the name of any person who is not a bona-fide yearly subscriber residing within the county, which was knowingly and willfully placed therein to make it appear to contain the names of a greater number of such subscribers than it in fact contains, the same shall not be considered, and

any applicant or paper so filing such fraudulent or untrue statement shall not be made a county official paper.''

Two contests of somewhat different character are here provided for. One arises merely from the fact that there are more applicants filing statements of circulation than there are selections to be made. *Runyon v. Haislet,* 90 Iowa 376; *Ross v. Campbell,* 98 Iowa 1; *Young v. Rann,* 111 Iowa 253. In such case, in the absence of any attack by one publisher on the list of the other on account of fraud or other illegality, and certainly in the absence of any other evidence than the lists themselves, the one ''thus showing''—that is, by the verified list filed—the greater number of bona-fide yearly, resident subscribers must be selected. The other contest contemplated by the statute arises where one publisher contests the *bona fides* of the circulation of his competitor, in which case other evidence may be received, and the lists are not conclusive. *Stone v. Quigley,* 138 Iowa 491. The contest here is of the character first mentioned.

With no objections or claims of fraud as to either list, and no evidence but the verified lists themselves, it is clear that the issue must be determined from the lists as verified and presented, and that the newspaper so shown to have the greater number of bona-fide yearly subscribers residing in the county was entitled to be selected.

The affidavit of appellant, accompanying the list of subscribers of the Anthon Herald, is as follows:

''I, G. F. Kane, being duly sworn on oath depose and say that I am the publisher and owner of the Anthon Herald, newspaper of general circulation; published at Anthon, Iowa. And that the attached list contains the correctly named post-office address of the actual bona-fide subscribers to the said Anthon Herald, and that all of the said subscribers are actual bona-fide residents of Woodbury County and state of Iowa, as shown therein, actual number being 707, all of which is true, as I verily believe.''

It is not shown by the affidavit or the list, except in a few instances where the subscription appears to have been paid a year or more in advance, that the subscribers were yearly subscribers. For aught that appears, all the other subscriptions

may have been for less than a year. The list shows that a very large proportion of the subscribers were a year or more in arrears. One who has subscribed for a newspaper for a definite time, and to whom the paper is sent after the expiration of that period, has an undoubted right to stop it at any time; and, in the absence of any showing to that effect, cannot be said to be, after the expiration of the time for which he subscribed, a subscriber for a definite time, or a yearly subscriber. The affidavit of appellee expressly stated that the list to which it was attached was a true and correct list of the bona-fide yearly subscribers to the Correctionville News, residing in the county, and the list itself showed 607 subscribers. In this state of the record, we have no occasion to consider the question, to which importance was attached by the lower court, as to the date to which a subscription must be paid, to constitute one a bona-fide yearly subscriber. As we have said, there is no claim or showing, by affidavit or otherwise, that the list presented by appellant was of yearly subscribers; and the list itself discloses not over twenty who, in the absence of such showing, appear to be yearly subscribers; and no objection or claim of fraud was made in respect to the list filed by appellee.

Upon the record presented, there was no error in holding that the appellee's newspaper had the greater number of bona-fide yearly subscribers residing in the county, and the case is— *Affirmed.*

ARTHUR, C. J., and STEVENS and DE GRAFF, JJ., concur.