BLOOMFIELD DAVIS COUNTY MESSENGER, Appellant, v. BLOOM-
FIELD DEMOCRAT et al., Appellees.

NEWSPAPERS: Official Newspapers—Sealed Envelopes for Subscription
1  List. The depositing with the county auditor of a sealed *pasteboard
box* of cards containing the names of the subscribers of a newspa-
per which is sought to be selected as a county official newspaper
is a sufficient compliance with the statute which directs the list of
subscribers to be submitted in sealed *envelopes.*

NEWSPAPERS: Official Newspapers—Who Are Subscribers. Two pub-
2  lishers who in good faith consolidate their newspaper plants and sub-
scription lists into one establishment and one subscription list, and
issue their respective newspapers separately and mail them to each
subscriber on the combined list without objection by the subscrib-
ers, may each, in a contest for selection as county official newspa-
pers, appropriate to himself, and against other contestants, the
entire list of subscribers appearing on the combined list.

NEWSPAPERS: Official Newspapers—Nonwillful Subscription List. A
3  publisher who makes application to have his newspaper selected as
a county official newspaper is not deprived of standing in the con-
test because of the nonwillful insertion in his list of subscribers
of names of persons who are not bona-fide subscribers.

NEWSPAPERS:      Official Newspapers—Fraudulent Lists—Insufficient
4  Showing. No inference of fraud is necessarily deducible in a contest
for selection of county official newspapers because a contestant
fails to indicate on his filed list of subscribers the times when the
various subscriptions expire.

Headnote 1: 29 Cyc. p. 697. Headnote 2: 29 Cyc. p. 697. Headnote
3: 29 Cyc. p. 697. Headnote 4: 29 Cyc. p. 697.

*Appeal from Davis District Court.*—D. M. ANDERSON, Judge.

OCTOBER 20, 1925.

REHEARING DENIED JANUARY 22, 1926.

CONTEST between the plaintiff and defendants, for selection
as official newspaper of Davis County for the year 1923. The
plaintiff was unsuccessful in the contest before the board of
supervisors, and equally so on the appeal tried in the district

court.  From the action of the district court, the plaintiff, Bloomfield Davis County Messenger, appeals.—*Affirmed.*

*Seneca Cornell, T. P. Bence,* and *T. A. Goodson,* for appellant.

*H. C. Taylor, Heinrich Taylor;* and *Verne J. Schlegel,* for appellees.

ALBERT, J.—I.   For a number of years prior to June, 1920, there were two papers published at Bloomfield, Davis County, Iowa, known as The Bloomfield Democrat and The Davis County Republican.   Owing to the scarcity and high cost of print paper, and the high cost of labor, it was deemed best by the management of these respective papers that they be combined, and issued as one paper.   An agreement was made between the publishers, the material part of which was that each publisher and owner should continue to own and edit his own paper, although the paper was to be issued as a joint paper, under the title of The Davis County Republican & The Bloomfield Democrat.   Each party was to make an inventory of property owned by him, and each was to have a salary of $150 a month.   The expenses were to be borne proportionately by the owners, and the profit, if any, was to be divided in certain proportion.   This, roughly, is the substance of their agreement.

The two printing plants were moved into a building, and the parties proceeded to carry out their agreement.   The subscription lists of the two papers were combined into one list, and persons who had previously subscribed to both papers were given credit as subscribers to the combined paper for a total time equivalent to the unexpired subscription for both papers. The business was carried on under this plan until sometime in September, 1922, when the owners proceeded to issue separate papers, a republican paper and a democratic paper, on different days of the week, both papers using the subscription list which had been formerly used by the combined papers.   Each subscriber whose name appeared on the combined list received both the republican and the democratic paper.

The appellant's newspaper was established in September, 1922.

The appellee newspapers filed applications with the board of supervisors of Davis County, asking to be selected as official newspapers of the county for 1923. These applications were on file with the county auditor of that county on January 1, 1923.

The board of supervisors met on the 2d day of January. In the forenoon of that day, the new members elected were not sworn in, and the old members transacted the business. Among other things, they acted on the application of the two papers to be selected as official county papers for the year 1923. They were chosen and designated by the board as the official papers for 1923. At noon of that day, the new members of the board were sworn in, and the old members retired. Subsequent thereto, and on the same day, The Messenger filed application to be selected as one of the official papers of said county. The new board seems to have disregarded the action of the old board, and on January 4, 1923, the record shows that they adjourned, to meet on January 15th following, to hear contest as to official county papers. The respective contestants filed their affidavits and showings by that time, and on that date the record of the board meeting shows that the applications of the respective papers were produced by the county auditor, the seals broken in the presence of the board of supervisors, and the contents inspected.

The appellant filed with his affidavit a list of purported bona-fide subscribers to his paper, numbering 745. The Davis County Republican list ostensibly showed 2,368 subscribers, and the Bloomfield Democrat list ostensibly showed 2,387.

The showings filed by each of the appellees consisted of a pasteboard box of cards. On each card were written the name and address of an alleged subscriber. Accompanying these boxes of cards and inclosed in the box was the affidavit of the publisher, as required by statute, *the correctness of which affidavit is not in question.* The boxes containing the cards and the affidavits were sealed, as provided by law. This gives rise to the first point relied on for reversal.

1. NEWSPAPERS: official newspapers: sealed envelopes for subscription list.

The section of the statute governing this matter is Section 441, Supplement to the Code, 1915, and reads as follows:

"In case of contest, the applicants shall each deposit with the county auditor, on or before a day named by the board of supervisors, a certified statement, subscribed and sworn to before some competent officer, giving the names of the several post offices, and the number and the names of the bona-fide yearly subscribers receiving their papers through each of said offices living within the county; such statements to be in sealed envelopes, and opened by the county auditor upon direction of the board of supervisors."

It is seriously urged by the appellant herein that this section of the statute has not been complied with by either of the appellees. Each of the cards in said boxes contained the name of a subscriber and his post-office address. The cards were bunched, and labeled on the back with the post-office address and the number of subscribers at each post office in the county. The affidavits accompanying the same sufficiently identified the contents of the boxes, and what was done in this instance was a substantial compliance with the statute. Nothing more could have been accomplished, had these names been copied on a paper and attached to the affidavit. Webster's International Dictionary defines "envelope" as "that which envelops; a wrapper; an inclosing cover, especially the cover or wrapper of a document." We therefore hold that this section of the statute has been substantially complied with.

II. The second point relied on for reversal is that the appellees could not each appropriate to itself, as its own list of subscribers, the entire list of the consolidated papers, and file the same as the list of bona-fide yearly subscribers in the contest.

This is rather a novel question. No authority seems to have been cited by either side, and we have been unable to find any, on diligent search. It might be said in passing, however, 2. NEWSPAPERS: that the evidence in the case very clearly shows official newspapers: who are the good faith of the appellee papers, both in subscribers. their action in issuing a joint publication and also in their action in issuing separate papers, as notice was published in their paper fully explaining the intention in both instances; and after September, 1922, when they issued sepa-

rate papers, both papers were sent to subscribers shown by the joint list formerly used by both papers.

In *Smead v. Stearns,* 173 Iowa 174, at page 184, we said:

" 'To become a subscriber to a newspaper includes some voluntary act on the part of the subscriber, or something which is, in effect, an assent by him to the use of his name as a subscriber.' "

When the appellees issued separate papers, and notified their subscribers that they would send both papers to each subscriber for the balance of their subscription, and the subscriber made no objection thereto, but continued to receive the papers, it constituted an assent on the part of the subscriber, within the meaning of the foregoing definition. We are of the opinion that the respective owners of the appellee papers had the right to issue separate papers at such a time as they elected so to do, and were each entitled to appropriate the consolidated list of subscribers used by the consolidated papers.

III.    Much time and attention have been given by counsel, both by argument and evidence, to attacking the bona-fide use of the subscription list claimed by the respective appellees. It is

3. NEWSPAPERS: official newspapers: nonwillful subscription list.

shown that in each of said lists there were some persons to whom the paper was sent gratuitously by appellees: among others, the ministry of the town, members of the board of supervisors, some county officials, the employees of the printing office, and some others. The trouble with this contention on the part of appellant is that in his list we find the same gratuities, to practically the same people. Hence, if the law is to be applied as appellant contends, then none of the applicants herein would be entitled to selection as official paper. However, the statute heretofore cited states, among other provisions, the following:

"And if it appears that any certified statement filed is fraudulent, or contains the name of any person who is not a bona-fide yearly subscriber residing within the county, which was knowingly and willfully placed therein to make it appear to contain the names of a greater number of such subscribers than it in fact contains, the same shall not be considered, and any applicant or paper so filing such fraudulent or untrue statement shall not be made a county official paper."

It is to be noted that this penalty applies only in cases where such prohibited name was knowingly and willfully placed therein. We have read the record and the transcript, and we fail to find any evidence showing that either the appellant or the appellees willfully placed said names in the lists filed with the auditor. Neither do we find any ground for holding either of the certified statements to be fraudulent.

It is to be remembered that this is a special proceeding, marked out by the statute, and the finding of the district court has, in this court, the force and effect of the finding of a jury.

It is urged quite strenuously that the showing made by appellees is badged with fraud because of their failure to file or set out the expiration dates of the various subscriptions listed by them. There are two answers to this. Each appellee frankly states his reasons for not setting out the expiration dates, and says that, if the court desires the expiration list, it will be promptly furnished.

4. NEWSPAPERS: official newspapers: fraudulent lists: insufficient showing.

The statute does not require this, and it is merely a matter of evidence. However, we have inspected the statement filed by the appellant herein, and find opposite each name listed, the month and day of the month, but find no year specified. We feel that this whole matter is evidentiary only, and in itself, as shown by the record herein, cannot be said to be a badge of fraud.

It is to be noted that, in the trial before the board of supervisors, no oral evidence was introduced by either side. The district court held against appellant's contention in this respect, and we hold that there was no error in so doing.

The appellant relies much on the case of *Packard v. Schmidt*, 110 Iowa 628; but to our minds this case has no application to the one before the court. The *Packard* case involved two separate papers, joining in an application to be selected as a third official paper, and asked that they be permitted to publish the official news of the county jointly, and receive a minimum amount allowed by law for one newspaper, thus combining their subscription lists for the purpose of securing county printing.

The burden of proof was on appellant to establish that he

had a larger number of bona-fide subscribers than either of appellees. This he has failed to do.

It would be useless to set out the large amount of testimony produced in this case. Suffice it to say, we have reviewed it all carefully, and reach the conclusion that the district court did not err in its ruling.—*Affirmed*.

FAVILLE, C. J., and EVANS and MORLING, JJ., concur.