WILLIS G. VAN DER BURG et al., Appellants, v. J. D. BAILEY et
al., Appellees.

No. 40140.

FEBRUARY 18, 1930.

*Hatley & Van-de Steeg,* for appellants.

*Klay & Klay,* for appellees.

DE GRAFF, J.—Sioux County, Iowa, is entitled, by reason of its population, to three official newspapers in which the official proceedings of its board of supervisors shall be published. Applications were filed with the county auditor by six newspapers of Sioux County. Two of said newspapers, to wit, the Alton Democrat and the Hawarden Independent, had been selected in conformity to statute, prior to the instant contest between the Hospers Tribune, published by John W. Van der Burg, the Boyden Reporter, published by Willis G. Van der Burg, plaintiffs and appellants, and the Orange City Journal, published by J. D. and Grace V. Bailey, defendants and appellees.

Two species of contests are recognized under our statute, to wit: a contest which arises from the fact that there are more applicants filing statements of circulation than there are selections to be made, and one which arises in the event that one publisher contests the *bona fides* of the circulation of his competitor. See *Kane v. Sturgis,* 198 Iowa 836. In the latter contest, evidence *aliunde* may be received, and the lists of subscribers *per se* are not conclusive. *Stone v. Quigley,* 138 Iowa 491. The instant contest is within the second class, for the reason that verified and specific objections were filed against the list submitted by the defendant publication, Orange City Journal.

The statute governing official newspapers requires, *inter alia,* that:

"In case of a contest [of the second class], each applicant shall deposit with the county auditor, in a sealed envelope, a statement, verified by him, showing the names of his bona-fide yearly subscribers living within the county, and the place at which each such subscriber receives such newspaper, and the manner of its delivery." Section 5401, Code, 1927.

A substantial compliance with the statute in this particular is sufficient, and a slight variance is not fatal.

The board of supervisors is the statutory quasi-judicial

tribunal, to determine this contest in the first instance, and upon the hearing, "may receive other evidence of circulation." An appeal lies from the decision of said board to the district court, and said appeal "shall be for trial *de novo* as an equitable action without formal pleadings." Section 5408.

In the instant case, an affidavit dated January 25, 1929, as required by statute, with the exception of showing "manner of delivery," was filed with the county auditor, which disclosed that the Orange City Journal had 797 subscribers in Sioux County, who are alleged in said affidavit to be "bona-fide yearly subscribers" to said newspaper. Subsequently, Willis G. Van der Burg, owner and publisher of the Boyden Reporter (also an applicant), filed his verified objections to the list of subscribers as furnished by the Orange City Journal, alleging, *inter alia*, that said list "is not a true and correct list of the bona-fide subscribers within the county, and that said list was filed by the applicant with intent to deceive the board, and that the applicant, at the time he filed said list, knew that the names stated therein were not the names of bona-fide subscribers." The said affidavit, also specified in what parts the list of subscribers is not a correct list. The contestant Boyden Reporter, in its filed affidavit, attached a "bona-fide" list of subscribers containing 282 names. The publisher of the Hospers Tribune, also an applicant, filed its affidavit, and attached thereto was a list of the bona-fide yearly subscribers to said newspaper, 689 in number; and it was further stated in said affidavit that the list was free from all advertisers' copies, free copies, etc. The Orange City Journal filed counter objections to the list of subscribers filed by the Hospers Tribune, and also objections to the list filed by the Boyden Reporter.

Prior to the hearing on the contest, the Hospers Tribune, by its publisher, and the Boyden Reporter, by its publisher, filed a joint offer, as provided by Section 5410 of the Code, wherein they certified that an agreement had been entered into between them "to publish the official proceedings of said board in both the Hospers Tribune and the Boyden Reporter for the combined compensation allowed by law for one paper."

One primary question is involved on this appeal: What is the legal definition and significance of the statutory phrase "bona-fide yearly subscribers living within the county?" Web-

ster's New International Dictionary defines the word "subscribe," in relation to a newspaper, as: "To enter one's name for a newspaper, a book, etc." Baldwin's Century Edition of Bouvier's Law Dictionary (page 1145) defines a "subscription list" as "a list of subscribers to some agreement with each other or a third person. The subscription list of a newspaper is an incident to the newspaper, and passes with the sale of the printing materials. 2 Watts 111." 7 Words & Phrases (3d Ser.) 1122 states, in defining the duty of a "yearly subscriber," that one subscribing for a definite time has the right to stop a newspaper at any time thereafter, and is not, after expiration of the subscription, a yearly subscriber, within the meaning of the law of Iowa.

If we take the United States Postal Laws and Regulations as a guide, we find this language:

"Publications of the second class sent by publishers to others than subscribers, and copies mailed by them in pursuance of a contract or agreement with an advertiser, or other interested party, for advertising purposes, shall not be accepted as subscribers' copies, but will be accepted as other than subscribers' copies at the rates shown in Section 420." Section 419, Paragraph 4, of the Postal Laws and Regulations.

It is said in *Ashton v. Stoy,* 96 Iowa 197, in reference to the meaning of the word "subscriber," within the purview of the statute involved herein:

"It is therefore provided that the persons to whom the papers are sent shall be subscribers in good faith for a year at least, and not persons to whom the papers are sent temporarily, for the purpose of increasing their circulation. * * * To become a subscriber to a newspaper includes some voluntary act on the part of the subscriber, or something which is in effect an assent by him to the use of his name as a subscriber. A person to whom a paper is sent without his knowledge or consent, either expressed or implied, is not a 'subscriber,' within the meaning of the statute."

We quote also from *Kane v. Sturgis,* 198 Iowa 836, l.c. 839:

"The list shows that a very large proportion of the sub-

scribers were a year or more in arrears. One who has subscribed for a newspaper for a definite time, and to whom the paper is sent after the expiration of that period, has an undoubted right to stop it at any time; and, in the absence of any showing to that effect, cannot be said to be, after the expiration of the time for which he subscribed, a subscriber for a definite time, or a yearly subscriber.''

We must measure the evidence in this case by the approved definitions heretofore given. True, Section 5401 does not require the applicant's affidavit to state therein the expiration date of a subscription to his newspaper.

''The statute does not require this, and it is merely a matter of evidence. * * * We feel that this whole matter is evidentiary only * * * .'' *Bloomfield Davis County Messenger v. Bloomfield Democrat*, 201 Iowa 196, l.c. 201.

However, in the instant case, the defendant publisher of the Orange City Journal, in his verified list of bona-fide and yearly subscribers, recites the expiration date of the subscriptions of the listed subscribers. By that very recital, the fact became a matter of evidence in this contest. The publisher (J. D. Bailey) of the Orange City Journal, in speaking of the dates found on his verified list, testified:

''John Dykstra, January, 1932, refers to the time the subscription expires. The figures after the name are for that purpose, and that is true of all other names on the list.''

It appears from an examination of the dates of expiration on the subscription list attached to the affidavit and referred to therein that 145 or more subscriptions to the Orange City Journal had expired from one to four years prior to the year 1928. Furthermore, there was evidence that there were some duplications in names: that is, that two papers were sent to one and the same person, and but one subscription had been paid. For example, the county attorney of Sioux County, as a subscriber, received one copy at his residence at Alton, Iowa, and another at his office in Orange City. Some of the alleged subscribers were not residents of Sioux County; some testified that they had not subscribed to the Journal for several years, and others, that they

had never subscribed, but were receiving the paper regularly, and had never refused to receive it; and two of the subscribers testified that they had never subscribed, nor had given their consent to anyone to send the paper, although no refusal to receive the paper had been made by them. This evidence must be taken into consideration in determining the bona-fide character of the subscription list filed by defendant.

We do not deem it necessary to enter further into a discussion of the subscription list of the Orange City Journal submitted to the board of supervisors for consideration in determining its selection as one of the official newspapers. There must be subtracted from the said list not less than 155 names on the Orange City Journal subscription list. As stated, the total number on the verified list is 797, as shown by the affidavit of the publisher of the Orange City Journal, and the verified list of the Hospers Tribune disclosed 689 names. The result, therefore, by process of subtraction, shows that the Hospers Tribune had the greater number of bona-fide yearly subscribers, and was, therefore, entitled to be named as the third official newspaper of Sioux County. We do not base our finding upon any fraud "knowingly and willfully" committed, as alleged by appellant Willis G. Van der Burg, publisher of the Boyden Reporter. See Section 5404, Code, 1927. Whatever errors or mistakes are disclosed in the filed subscription list by the Orange City Journal are attributable to the inadvertence or carelessness of the publisher or the person preparing said list from the records of said newspaper.

Lastly, the appellants invoke Section 5410, which, it is claimed, entitles the Boyden Reporter to combine its list with the Hospers Tribune and thereby divide the compensation  which the said offerors, under their filed agreement, should receive, under the terms of said section. *Packard v. Snyder*, 110 Iowa 628, was decided in 1900. Our general assembly, in 1915, amended Section 441, Code, 1897, giving rise to the present Section 5410. This section defines the division of compensation under the instant facts. In the event the county has two newspapers (at least one of which by reason of its location and circulation is entitled to be selected as a county official newspaper), the board shall designate each of them as an official newspaper of

the county.  The section further provides what compensation shall be allowed to said newspaper so selected.  Under our holding herein, one of the two newspapers in question had the right to be selected as the official county newspaper, and therefore the other newspaper had the right to agree with it, as it did agree, to a division of compensation under the terms of said section.  It follows, therefore, that the judgment of the trial court must be, and is—*Reversed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.