TIMES-GUTHRIAN PUBLISHING Co., appellant, v. GUTHRIE COUNTY VEDETTE and GUTHRIE COUNTY, appellees.

No. 51213.

(Reported in 125 N.W.2d 829)

JANUARY 14, 1964.

REHEARING DENIED APRIL 8, 1964.

C. H. Taylor, of Guthrie Center, for appellant.

John Donahey, of Panora, for appellee Guthrie County Vedette.

MOORE, J.—Guthrie County, by reason of its population, is entitled to two official newspapers in which the proceedings of its board of supervisors shall be published. In January 1963 applications for official designation were filed with the county auditor by three newspapers. Thereafter, as required by section 349.5, Code, 1962, each applicant deposited with the auditor a verified statement showing the names of its bona fide yearly subscribers living within the county with addresses and manner

304

of delivery. The Guthrie County Vedette listed 1976 subscribers, the Guthrie Center Times 1738 and the Guthrian 1720.

From the board of supervisors' decision selecting the Vedette and Times as the two official newspapers for 1963 the Guthrian appealed to the district court. No contest was asserted as to the selection of the Times. Both the Guthrian and Times are published by the Times-Guthrian Publishing Company.

The trial court affirmed the board's decision, designated the Vedette as one of the official county newspapers for 1963 and dismissed plaintiff's petition.

Plaintiff on its appeal here relies on three propositions for reversal: That (1) 700 persons listed by Vedette were not bona fide subscribers, (2) evidence other than Vedette's application shows a far less number of subscribers, and (3) the trial court's decision is based on an exhibit not in evidence. We will consider them in reverse order.

I. The trial court found each of the 700 persons whom plaintiff contends were not subscribers had signed a card which read:

"A businessman in Panora who wishes to cover his trade territory is offering a one-year free subscription to the Guthrie County Vedette. If you will accept this offer please sign below."

The record does not disclose the card was received in evidence but reference to and use of a subscription card was fully developed by plaintiff's counsel on cross-examination of Lee Stoy, one of the owners of the Vedette. Part of the cross-examination is:

"Q. Do you find a subscription card for Donald L. Scott? A. Yes.

"Q. May I see that, please? This is a card bearing the name of Donald L. Scott, Panora, Iowa, Route 1, says 'To 7-1-63'. Now, Mr. Stoy, how could I determine from that subscription card what, when and by whom that was paid, or if—let's put it that way—or if it was paid? A. It was paid. * * *

"Q. I see. What is your practice on that? A. We have them sign a card that they will accept a year's subscription to the Vedette.

"Q. Have who, the subscriber? A. Yes.

"Q. Do you have a card for Donald Scott? A. I do if I didn't lay it down here.

"Q. May I see it, please? Now this was the card, as it is now, at the time it was presented to Donald Scott? A. Minus the signature, of course.

"Q. It was printed as such? A. Yes. * * *

"Q. And do you have seven hundred signed cards such as the Donald Scott card, which you gave me? A. I believe so. I haven't counted them, but it looks like there might be."

Assuming the trial court considered a card not formally introduced in evidence we find no prejudicial error resulted. The testimony of the only witness used in the trial clearly establishes defendant had subscription cards duly signed by each of the 700 persons as found by the trial court.

Plaintiff's counsel having elicited this testimony it cannot complain because the evidence proved unfavorable. Reeves v. Harrington, 85 Iowa 741, 742, 52 N.W. 517; Glatstein v. Grund, 243 Iowa 541, 552, 51 N.W.2d 162, 169, 36 A. L. R.2d 531; 88 C. J. S., Trial, section 138, page 282.

We conclude also plaintiff waived formal introduction of the card in evidence. 88 C. J. S., Trial, section 62b, page 170, states:

"Formal introduction of documentary evidence may be waived. Thus, a formal introduction is waived where the court and parties treat an instrument as in evidence, or where a witness is examined with respect to it, or where it is read without objection, or such reference thereto is made by counsel in his examination as necessarily leads the jury to the conclusion that they are listening to testimony concerning the contents thereof."

II. Plaintiff argues the evidence shows defendant in June 1962 listed with a trade publication a total of 1610 subscribers and 1728 in a sworn statement to the U. S. Postal Department on October 1, 1962, and therefore the trial court erred. Plaintiff is really asking that only the evidence favorable to it be considered and it be taken in its most favorable light. The sworn statement to the postal department relates to a past twelve-month average. In addition to the sworn statement filed with the county auditor, Lee Stoy testified that of the 1976 listed all

were subscribers of six months or more before the date of the application with the exception of perhaps 25 or 30 of less than six months. Thus we have some conflict in the evidence from all of which it was the duty of the trial court to decide the facts. We have a like duty, as by Code section 349.13 the matter is an equitable action in the trial court and therefore triable de novo here.

III. The real fighting issue is plaintiff's claim that 700 persons listed by defendant Vedette were not bona fide subscribers.

Code section 349.7 provides:

"Subscribers—how determined. The board of supervisors shall determine the bona fide yearly subscribers of a newspaper within the county, as follows:

"1. Those subscribers listed by the publisher whose papers are delivered, by or for him, by mail or otherwise, upon an order or subscription for same by the subscriber, and in accordance with the postal laws and regulations, and who have been subscribers at least six consecutive months prior to date of application.

"2. Those subscribers, defined as in subsection 1, whose papers are delivered by carrier regularly, or purchased from the publisher for resale and delivery by independent carriers, said independent carriers having filed with the publisher a list of their subscribers."

After the year's subscription card was signed by these persons defendant was paid by H. M. Reed, O. J. Biedelman or Emory Robinson. Stoy testified:

"Q. Now, what is the occasion of one of three persons paying this subscription of Donald Scott? A. They wanted to cover this territory through the area. * * *

"Q. How many do they so pay for? A. They paid for approximately 700, maybe minus a few.

"Q. They paid for 700 subscriptions at a dollar and a half a piece? A. Yes. Maybe minus a few."

For individual subscriptions defendant's regular rate was three dollars per year.

Webster's Third New International Dictionary defines the

word "subscribe" in relation to a newspaper as: "to enter one's name for a publication (as a book or newspaper) or service." "Subscriber" is defined as: "one that subscribes: as: a. one that signs something (as a letter, document, agreement), b. one that agrees or consents."

39 Am. Jur., Newspapers and Press Associations, section 10, page 8, states:

"For the purpose of securing as large a general circulation of official notices and publications as possible, it is usual for the legislature to provide for the designation of a certain number of papers having the largest circulation in the particular community. Some statutes go further and provide that the circulation of a newspaper shall depend on the number of its subscribers, and it has been held that to satisfy the requirement of such a statute, a *subscriber is one who voluntarily subscribes for the paper or assents to a subscription by another for him.*" (Emphasis ours.)

In Ashton v. Stoy, 96 Iowa 197, 201, 64 N.W. 804, 805, 30 L. R. A. 584, in reference to the meaning of "subscriber" within the purview of the statute involved herein we said:

"It is therefore provided that the persons to whom the papers are sent shall be subscribers in good faith for a year at least, and not persons to whom the papers are sent temporarily for the purpose of increasing their circulation. The primary meaning of the word 'subscriber' is to write underneath, as one's name; but it also means to give consent to something written, to assent, to agree; and a subscriber is defined to be: '(1) One who subscribes; one who contributes to an undertaking by subscribing. (2) One who enters his name for a paper, book, map, or the like.' Webster Int. Dict. To become a subscriber to a newspaper includes some voluntary act on the part of the subscriber, or something which is in effect an assent by him to the use of his name as a subscriber." See also Van der Burg v. Bailey, 209 Iowa 991, 229 N.W. 253.

Measuring the evidence here by these approved definitions and the wording of the statute we conclude the 700 signers of the cards were bona fide yearly subscribers of the Vedette. Plaintiff's claim that defendant's business was not conducted in

accordance with the postal laws and regulations is without support in the record.

. We agree with the ruling and decree of the district court.— Affirmed.

All JUSTICES concur except SNELL, J., who takes no part.