Chas. V. DUNHAM d/b/a The
Brooklyn Paper, Appellee,

v.

Russell M. CLAYTON and Marcella S.
Saylor, Appellants.

No. 90–540.

Court of Appeals of Iowa.

April 2, 1991.

Thomas A. Lacina of Charnetski, Olson & Lacina, Grinnell, for appellants.

Roger W. Sunleaf of McNeil & Sunleaf, Montezuma, for appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Three newspapers were to be designated official newspapers for Poweshiek County for the year 1986 pursuant to Iowa Code chapter 349. Under that chapter the papers with the larger bona fide circulation would be so designated. The positions of the largest two newspapers in the county are uncontested. Two small newspapers struggling for the third designated official newspaper position are the parties to this action.

The Brooklyn Paper claimed to have 1153 subscribers. The Free Press claimed 1094. After several contested hearings, the county board of supervisors finally named The Free Press as the official county newspaper for 1986 on February 16, 1989. The Board decided The Free Press had 1094 bona fide subscribers and The Brooklyn Paper had 1067. The Brooklyn Paper appealed to the district court.

Before the district court The Brooklyn Paper claimed 1131 annual subscribers; The Free Press claimed 1093. The Free Press challenged eighty-nine of the Brooklyn Paper's subscriptions. The Brooklyn Paper challenged 121 of the Free Press's. After hearing the evidence, the district court concluded twenty-six of The Free Press's challenges could be sustained.

The district court tallied the subscriptions at 1105 for The Brooklyn Paper and 1093 for The Free Press. The court ordered The Brooklyn Paper be designated official newspaper for Poweshiek County for the calendar year 1986.

On appeal, The Free Press renews its challenges to the count. First, it contends thirty-seven unsolicited subscriptions to The Brooklyn Paper given by the Hartwick State Bank to promote the Hartwick centennial should not have been credited. Second, it argues the district court should not have considered challenges to its subscriptions not raised by The Brooklyn Press before the Board. Third, the late renewals of The Free Press should not be excluded from its subscriber list. Finally, it argues other challenges to The Free Press list should not be accepted.

By statute, this action must be tried in equity. Iowa Code § 349.13 (1985). Therefore, our review is de novo. *Id.*; Iowa R.App.P. 4.

I. *Official Newspapers.*

We briefly review the relevant law and rationale behind Iowa's official newspapers

statute. *See* Iowa Code chap. 349. Certain newspapers in a county are selected to be the official newspaper for that county each year. *Id.* at § 349.1. Official notices of county board of supervisors, county treasurer reports, schedule of bills passed by the board, and notice of other official county business must be published. *Id.* at § 349.16.

> "The reason for selecting the papers having the largest number of subscribers is to secure as large a general circulation of the official publications of the county among its citizens as is practicable in two newspapers."

*Albia Publishing Co. v. Klobnak,* 434 N.W.2d 636, 638 (Iowa 1989) (quoting *Ashton v. Story,* 96 Iowa 197, 201, 64 N.W. 804, 805 (1895)).

The district court's ruling in the present case sets out the applicable procedure for contesting the choice of official newspapers:

> Section 331.303(6) vests the board of supervisors with the power to appoint the newspaper in which official proceedings shall be published pursuant to Chapter 349. Section 349.2 directs that the supervisors shall select that newspaper which has the largest number of bona fide yearly subscribers within the county. Sections 349.4, .5, and .6 provide that any publisher who desires his newspaper to be selected may make a written application to the board of supervisors. In case of a contest, each applicant must deposit with the county auditor a verified statement showing the names of the bona fide subscribers living within the county. In the event of a contest, the board of supervisors shall decide which newspaper has the largest list of subscribers and select that newspaper as the official paper.
>
> Section 349.7[ ] requires that subscribers must have been subscribers for at least six consecutive months before the date of application. The papers must be regularly delivered by carrier or upon an order or subscription.
>
> Section 349.11 provides for appeal to the district court. Section 349.13 pro-

vides that the appeal shall be triable de novo as an equitable action.

The Iowa Supreme Court has delineated the legal definition of "subscriber." In the leading case on the subject, the supreme court stated:

> [P]ersons to whom the papers are sent shall be subscribers in good faith for a year at least, and not persons to whom the papers are sent temporarily for the purpose of increasing their circulation. The primary meaning of the word "subscriber" is to write underneath, as one's name; but it also means to give consent to something written, to assent, to agree; and a subscriber is defined to be: "(1) One who subscribes; one who contributes to an undertaking by subscribing. (2) One who enters his name for a paper, book, map, or the like." Webster Int. Dict. To become a subscriber to a newspaper includes some voluntary act on the part of the subscriber, or something which is in effect an assent by him to the use of his name as a subscriber. A person to whom a paper is sent without his knowledge or consent, either expressed or implied, is not a "subscriber," within the meaning of the statute.

*Ashton v. Story,* 96 Iowa 197, 201, 64 N.W. 804, 805 (1895).

> Some statutes ... provide that the circulation of a newspaper shall depend on the numbers of its subscribers, and it has been held that to satisfy the requirement of such a statute, a *subscriber is one who voluntarily subscribes for the paper or assents to a subscription by another for him.*

*Times–Guthrian Publishing Co. v. Guthrie County Vedette,* 256 Iowa 302, 307, 125 N.W.2d 829, 832 (1964) (quoting 39 Am.Jur. *Newspapers and Press Associations* § 10; emphasis in *Times–Guthrian* ).

Subscribers whose subscriptions had expired for more than a year were not bona fide "yearly subscribers" of a newspaper seeking to be named the official newspaper. *Van der Berg v. Bailey,* 209 Iowa 991, 994–95, 229 N.W. 253, 254 (1930) (quoting *Kane v. Sturgis,* 198 Iowa 836, 839, 200 N.W. 329, 330 (1924)). Where a paper sold its subscription list to another paper and went out of business, and the purchasing

paper sent its paper to the acquired subscribers, they became bona fide subscribers of the purchasing paper. *Brown v. McGuire*, 181 Iowa 255, 164 N.W. 600 (1917). When two separate newspapers combine, the paid subscribers of each newspaper will be counted as bona fide subscribers of the other, where both newspapers are sent to all the subscribers and the subscribers do not object. *Bloomfield Davis County Messenger v. Bloomfield Democrat*, 201 Iowa 196, 200, 205 N.W. 345, 346 (1926).

A reduction in the yearly price of his paper from one dollar to twenty-five cents to increase subscriptions for the purpose of securing the county's printing did not prevent the subscribers so obtained from being bona fide. *Smith v. Rockwell*, 113 Iowa 452, 85 N.W. 632 (1901). *See also* 58 Am.Jur.2d, *Newspapers, etc.* §§ 33–60 (1989).

## II. *Business Gift Subscriptions.*

■ Having set out the applicable law, we turn to the facts of this case. The business gift subscriptions at issue were purchased by the Hartwick State Bank as a part of its centennial promotion for the town of Hartwick to be held in July, 1985. In January and February 1985 the Hartwick Bank bought sixty gift subscriptions and paid for them. Only forty were counted by the Brooklyn Paper in their total. The other twenty involved out-of-county residents, as well as others not qualified for its official subscriber list.

The bank sent this notice to each recipient of the gift subscription:

Here's the latest news about the
HARTWICK CENTENNIAL!

You have been selected to receive a
subscription to
THE BROOKLYN PAPER

courtesy of
HARTWICK STATE BANK

Look for Centennial News and Calendar
on the Front Page every week!

Celebrate with us July 19, 20, 21, 1985

The Brooklyn editor sent the business gift subscriptions to the recipients. None of the papers were ever returned to the Brooklyn editor. However, no authorization card or other voluntary subscription form was sent to the recipients of the gift subscriptions. They were not provided with a simple method whereby they could accept or reject the gift.

This case is factually analogous to *Ashton v. Story*. In that case the former county attorney sent business gift subscriptions to the local newspaper to forty-four persons. He also sent to each of the gift recipients the following message:

"Guthrie Center, Iowa, Dec. 27, 1892. Dear Sir: Upon retiring from the office of county attorney, I have established a real-estate office in connection with my other businesses. Knowing the value of a kind word from personal friends when occasion offers, I have taken the liberty to address you as such friend, hoping you may be able to throw some business in my way. As I do not feel like asking something for nothing, I have made arrangements with the publisher of the *Guthrie Times* to furnish a paid-up subscription to *Times* for one year as a partial consideration for any aid you may extend in my behalf among your neighbors. You will find inclosed a receipt in full for one year to the *Times*. You will find my column advertised in the paper. Respectfully, etc., Wm. H. Stiles."

*Ashton*, 96 Iowa at 200, 64 N.W. at 805.

In *Ashton* the supreme court stated:

Of the forty-four persons whose names were furnished to the defendants by Stiles, but few are shown to have approved the sending of the paper to them, and it is not certain that any had done so when the board of supervisors was required to make a selection of newspapers, while some refused to receive it. We are of the opinion that the district court was fully authorized by the evidence to strike from the list of the *Times* the names in question.

*Id.*, 96 Iowa at 201–02, 64 N.W. at 805.

In a later Guthrie County case, a businessman offered a free one-year subscrip-

tion. Persons wishing to accept the offer were required to sign a card which stated:

> "A businessman in Panora who wishes to cover his trade territory, is offering a one year free subscription to the Guthrie County Vedette. If you will accept this offer please sign below."

*Times–Guthrian*, 256 Iowa at 304, 125 N.W.2d at 830.

Our supreme court found these signed authorization cards were sufficient to show voluntary assent to the business gift subscriptions. Thus, the almost 700 recipients were qualified on the *Vedette* subscriber list for the official newspaper contest. *Id.*, 256 Iowa at 305–08, 125 N.W.2d at 831–32.

The dividing line in these business gift subscription cases appears to be the recipient must show some *affirmative* assent to the gift subscription to be considered a bona fide subscriber under Iowa Code section 349.7. *See also Van der Burg*, 209 Iowa 991, 995–96, 229 N.W. 253, 254 (1930).

The Brooklyn Paper points to other Iowa cases which hold the mere failure to refuse the subscription is adequate to show assent, making the recipient a bona fide subscriber. *See Brown v. McGuire*, 181 Iowa 255, 164 N.W. 600 (1917); *Bloomfield Davis County Messenger*, 201 Iowa 196, 205 N.W. 345 (1926). However, these cases are distinguishable. In both *Brown* and *Bloomfield Messenger*, the recipients were receiving a substituted paper for a newspaper subscription *they had already paid for*. Gift subscriptions were not involved in either case. In both cases, if the recipient was displeased with the substitution, he could have canceled and *received a refund of the unused subscription payment. See Brown*, 181 Iowa at 259, 164 N.W. at 601. Thus, in both cases, the subscriber had a pecuniary incentive to cancel if he was not satisfied with the substitution.

No such pecuniary interest is present in the case of a free gift subscription. The gift recipient stands to receive nothing at all if he cancels. A further distinguishing factor arises in the very fact the recipient was already a voluntary subscriber to a newspaper, and the second newspaper was merely a substitution for the first.

We determine *Ashton* and *Times–Guthrian* are controlling in the present case. A recipient of a free business gift newspaper subscription must make an affirmative assent to the subscription before he may be counted as a bona fide subscriber under Iowa Code section 349.7. A mere failure to cancel the business gift subscription is not enough.

We reverse the trial court on this issue.

### III. *Theories Not Raised Before Board.*

The Free Press next challenges the trial court's consideration of theories not presented before the Board of Supervisors. The Free Press premises its argument upon the scope of review outlined in *Ashton*, 96 Iowa at 198, 202, 64 N.W. 804, 805. We note initially the pertinent Iowa Code section has been changed since *Ashton* was decided back in 1895. Review at that time was by ordinary proceedings. *See Ames Evening Times v. Ames Weekly Tribune*, 183 Iowa, 1188, 1190, 168 N.W. 106, 107 (1918); *Democrat Publishing Co. v. Lewis*, 90 Iowa 304, 307, 57 N.W. 869, 870 (1894). The present statute provides:

> Said appeal shall be triable de novo as an equitable action without formal pleadings at any time after the expiration of twenty days following the filing of such transcript.

Iowa Code § 349.13.

To answer the appellant's challenge, we must first determine whether the present statute provides for a new trial at the district court level, or merely a de novo review of the Board's findings. *See, e.g., In re Marriage of Huston*, 263 N.W.2d 697, 699 (Iowa 1978).

> When statutory language expressly provides for a trial or hearing de novo, we believe this procedure must be distinguished from a review de novo. We reviewed these differences in *Mason v. World War II Service Compensation Board*, 243 Iowa 341, 344–45, 51 N.W.2d 432, 434 (1952) [the leading case on the issue], and pointed out that a review proceeding is usually confined to the record made in the lower tribunal. Con-

versely, a hearing de novo means the case is tried as if it had not been heard before. In *Mason*, we cited cases from other jurisdictions, indicating that a de novo trial contemplates evidence anew without any presumptions in favor of the agency's decision and the same as if no previous hearing had been held.... A distinguishing feature of a trial de novo as opposed to a de novo review is that we do not afford a presumption of regularity to the factual determination by a board, agency, or commission. In a criminal appeal from a magistrate's decision pursuant to former Iowa Rule of Criminal Procedure 54 which provided for an appeal de novo, we held ... that a hearing de novo on appeal signifies that the case is heard anew, afresh, a second time, and that the appealing party was entitled to a new trial.

*Sieg v. Civil Serv. Comm. of West Des Moines*, 342 N.W.2d 824, 828 (Iowa 1983) (citations omitted).

A hearing de novo means that a case shall be heard the same as if it had not been heard before. This is especially true where the hearing is in a court of general, original jurisdiction like the district court, as in equity.

\*     \*     \*     \*     \*     \*

The authorities generally recognize that the right to a de novo hearing unlimited in scope, not a mere review, in a court of general jurisdiction implies the right to offer any competent evidence. ... "A hearing de novo by a court of an administrative determination will be tried as any other civil action when the statute does not prescribe the procedure to be followed or limit the scope of the determination to be made."

\*     \*     \*     \*     \*     \*

"The district courts of this state are courts of general jurisdiction, and in the absence of specific statutory restriction a provision of statute providing for an appeal to and a trial de novo in the district court contemplates a trial in the commonly accepted sense of that term in a court of general jurisdiction, ..."

*Mason*, 243 Iowa at 344–45, 51 N.W.2d at 434 (citations omitted).

■ We determine The Brooklyn Paper was within its legally permissible boundaries in presenting new theories to the district court. This action was to be "tried as if it had never been heard before." *Sieg*, 342 N.W.2d at 828. The trial court acted properly in allowing these new theories and new evidence.

We affirm the trial court on this issue.

## IV. *Late Renewals.*

We thus reach those issues first raised by the Brooklyn Paper at the trial court. The trial court did not rule on these issues, as it deemed its initial ruling on the thirty-seven gifts subscriptions from the Hartwick Bank to be determinative. As we have reversed on this issue, we must determine the Brooklyn Paper's challenges.

The Brooklyn Paper apparently contests ninety late renewals on The Free Press's subscriber's list. It cites to *Kane v. Sturgis*, 198 Iowa 836, 200 N.W. 329 (1924), as supporting the proposition unpaid recipients may not be listed as bona fide subscribers. We set out the pertinent language of the *Kane* opinion:

It is not shown by the affidavit or list, except in a few instances where the subscription appears to have been paid a year or more in advance, that the subscribers were yearly subscribers. For aught that appears, all the other subscriptions may have been for less than a year. *The list shows that a very large proportion of the subscribers were a year or more in arrears.* One who has subscribed for a newspaper for a definite time, and to whom the paper is sent after the expiration of that period, has an undoubted right to stop it at any time; and, in the absence of any showing to that effect, cannot be said to be, after the expiration of the time for which he subscribed, a subscriber for a definite time, or a yearly subscriber. The affidavit of appellee expressly stated that the list to which it was attached was a true and correct list of the bona-fide yearly subscribers to the *Correctionville News*, re-

siding in the county, and the list itself showed 607 subscribers. *In this state of the record, we have no occasion to consider the question to which importance was attached by the lower court, as to the date to which a subscription must be paid, to constitute one a bona-fide yearly subscriber.* As we have said, there is no claim or showing, by affidavit or otherwise, that the list presented by appellant was of yearly subscribers; and the list itself discloses not over twenty who, in the absence of such showing, appear to be yearly subscribers; and no objection or claim of fraud was made in respect to the list filed by appellee.

*Id.,* 198 Iowa at 838–39, 200 N.W. at 330 (emphasis added).

We do not interpret *Kane* as narrowly as does The Brooklyn Paper. *Kane* limits its holding to those instances where "there is no claim or showing, by affidavit or otherwise, that the list presented by appellant was of yearly subscribers; ...." *Id.* The *Kane* court had "no occasion to consider the question ... as the date to which subscription must be paid, to constitute a bona-fide yearly subscriber." *Id.*

Here The Free Press makes "a claim or showing, by affidavit or otherwise, that the list presented by appellant was of yearly subscribers." *Id.* The Free Press introduced receipts showing paid subscriptions for the late renewals.

The statute requires only that the individuals counted be "bona fide" subscribers. *See* Iowa Code section 349.5. There is no prepayment requirement under the Code. Like many businesses, newspapers deliver their product on a promise to pay. The goals of the statute are advanced upon receipt of the money to pay for the renewal. As Mr. Dunham of The Brooklyn Paper stated at one of the hearings before the Board of Supervisors: "Well, the difference is when you have a long standing subscriber that might have run five or ten years, he doesn't pay the same date every year. You consider them a subscriber. You do not take them off the list." (Punctuation added.)

We have reviewed the law and the evidence presented on this issue. We deem the language in *Kane* to be instructive, as it singles out those recipients a year or more delinquent in their renewal. *Id.* Unlike the present case, in *Kane* apparently no evidence was introduced showing those recipients did in fact become bona fide yearly subscribers.

■ We hold those persons were bona fide yearly subscribers whom the evidence shows had paid their subscriptions within one year or by the time of the de novo trial in the district court, which ever comes first. This allows the usual business practice to be followed without undue constraint on either the customer or the newspaper. Additionally, it provides a date certain on which the Board, the trial court, and the parties may base their determination of bona fide yearly subscribers.

We determine the late renewal challenges by The Brooklyn Paper to The Free Press's subscription list are not viable.

## V. *Other Challenges.*

■ Several of the flaws in The Free Press subscription list challenged by The Brooklyn Press are identical to flaws in its own subscription list. Where the challenger has identical flaws in its own list comparable to those it objects to in its rival's, the challenge is in effect nullified. *See Bloomfield Messenger,* 201 Iowa at 200–01, 205 N.W. at 346–47. We determine those challenges based upon individual gifts and other similar items are nullified by The Brooklyn Paper's identical inclusion of the same class of subscribers in its own list. Thus both The Brooklyn Paper's nine individual gift subscriptions and The Free Press's seven gift subscriptions should be allowed to stand.

## VI. *Summary.*

We determine The Brooklyn Paper's subscribers to be 1068 in number and The Free Press's subscribers to be 1093 in number. The Free Press has the greater number of subscribers. Hence, it is the third official newspaper for Poweshiek County for 1986.

Iowa Code § 349.2. We reinstate the decision of the Board of Supervisors.

Because our holdings on the above issues are determinative of this case, we do not reach the other issues raised on appeal.

We reverse the trial court and hold The Free Press to be the official county newspaper for 1986.

REVERSED.

SACKETT, J., concurs.

DONIELSON, P.J., specially concurs.

DONIELSON, Presiding Judge (specially concurring).

I concur in the result because I understand we are bound by the *Ashton* and *Times–Guthrian* decisions. *Ashton v. Story*, 96 Iowa 197, 64 N.W. 804 (1895); *Times–Guthrian Publishing Co. v. Guthrie County Vedette*, 256 Iowa 302, 125 N.W.2d 829 (1964). However, I believe those cases deserve serious reconsideration.

So long as a business donor has made a good faith gift subscription to a third-party donee, I see no reason why the third-party donee must *affirmatively* assent to that gift. We do not require such a showing of assent in any other gift context and I cannot understand why we should do so here. I believe a business gift subscription is a bona fide subscription so long as the donee accepts the paper without objection—that is all the manifestation of assent I would require.